230 N.J. Super. 141 (1989)
553 A.2d 34
CHARLES A. VICKEY, PLAINTIFF-APPELLANT,
v.
HARRY NESSLER AND WILLIAM TRUMP, DEFENDANTS-RESPONDENTS, AND STATE OF NEW JERSEY, A BODY POLITIC, NEW JERSEY DIVISION OF GAMING ENFORCEMENT, NEW JERSEY STATE POLICE, AND WE TRY HARDER, INC., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 14, 1988.
Decided January 25, 1989.
*143 Before Judges J.H. COLEMAN, BAIME and D'ANNUNZIO.
Pellettieri Rabstein and Altman, attorneys for appellant (Edward Slaughter, Jr., of counsel; Mark S. Nathan on the brief).
Hillman & Sullivan, attorneys for respondents (Mark A. Sullivan, Jr., of counsel; Carol A. Berlen on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
The pivotal issues raised in this appeal are whether a motorist charged with disregarding a traffic signal is entitled to maintain a malicious prosecution suit and a Civil Rights claim *144 under 42 U.S.C, § 1983 after a Municipal Court ruled in favor of the motorist. Summary judgments were granted dismissing the § 1983 action. The trial judge entered a judgment of involuntary dismissal at the end of plaintiff's evidence as to the malicious prosecution claim. This is an appeal from the final judgment dismissing the complaint. We hold that neither cause of action is cognizable under the facts of this case and therefore affirm.

I

PROCEDURAL HISTORY AND FACTS
The pertinent facts are not in dispute. On June 21, 1982 plaintiff Charles Vickey operated a motorcycle along Liberty Street in Trenton. At the same time, defendant Harry Nessler, a New Jersey State trooper, operated an unmarked car on South Broad Street. Defendant William Trump, also a State trooper, was a passenger in the unmarked car. The two vehicles collided in the intersection of Broad Street and Liberty Street. A traffic light controlled the flow of traffic at the intersection.
Defendant Nessler filed a traffic complaint against plaintiff charging him with disregarding the traffic signal, contrary to N.J.S.A. 39:4-81. Subsequently, plaintiff filed a countercomplaint against defendant Nessler charging him with disregarding the traffic signal. Both complaints were heard in the Trenton Municipal Court on September 13 and 15, 1982. At the conclusion of the trial, the judge found only defendant Nessler had disregarded the traffic light. The complaint against plaintiff was dismissed and that dismissal undergirds the present litigation.
On April 6, 1984 plaintiff filed a five-count complaint in the Law Division. At the time of the accident, defendants Nessler and Trump were employed by the Division of State Police and assigned to the Division of Gaming Enforcement. The unmarked vehicle which defendant Nessler operated was owned *145 by defendant We Try Harder, Inc. and leased to New Jersey Division of Gaming Enforcement. Count One of the complaint alleged negligent operation of the motor vehicle by defendant Nessler. That count was settled and dismissed by stipulation on July 11, 1987.
Counts Two and Five of the complaint alleged violations of 42 U.S.C. § 1983. In Counts Three and Four plaintiff alleged malicious prosecution of the complaint in the Municipal Court by defendants Nessler and Trump. Summary judgment was granted the governmental entities on April 29, 1986 dismissing Counts Two through Five. No appeal has been taken from that ruling. Additionally, on February 27, 1987 defendants Nessler and Trump were granted summary judgment under Counts Two and Five but denied summary judgment on Counts Three and Four. A jury trial was conducted on March 3 and 5, 1987 respecting the malicious prosecution claim (Counts Three and Four). At the conclusion of plaintiff's case, the malicious prosecution claim was dismissed. See R. 4:37-2(b). Plaintiff has appealed the dismissal of the Civil Rights and the malicious prosecution claims (Counts Two through Five) respecting defendants Nessler and Trump.

II

MALICIOUS PROSECUTION CLAIM
In this appeal, plaintiff contends the trial judge erred in granting an involuntary dismissal of his malicious prosecution claim against defendants Nessler and Trump. Plaintiff argues that he was not required to establish a special grievance as an element of the malicious prosecution claim because the prosecution in the Trenton Municipal Court for allegedly disregarding a traffic signal was criminal rather than civil in nature. In the alternative, plaintiff contends that (1) because he could have been arrested pursuant to R. 7:6-3(b) for nonappearance in court, (2) because he was exposed to incarceration for up to 15 days under N.J.S.A. 39:4-203 and (3) because of the potential *146 accumulation of violation points, if found guilty, he made a prima facie showing of a special grievance.
The elements of a malicious prosecution action based on the prior prosecution of a criminal case were articulated in Lind v. Schmid, 67 N.J. 255, 262 (1975). There, it was observed that
A malicious prosecution action arising out of a criminal prosecution requires proof: (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for he proceeding, and (4) that it was terminated favorably to the plaintiff. Prosser, Law of Torts, § 119 at 835 (4th ed. 1971); Evans v. Jersey Central Power etc. Co., 119 N.J.L. 88 (E. & A. 1937).
The essence of a malicious prosecution action based on the prior criminal prosecution is the lack of probable cause, which is a negative that plaintiff must establish along with the other elements. Ibid.
The elements of a malicious prosecution action, or malicious use of process as it is sometimes referred to, see Ash v. Cohn, 119 N.J.L. 54, 58 (E. & A. 1937) for the distinction, when the underlying proceeding is civil rather than criminal was outlined in Potts v. Imlay, 4 N.J.L. 382, 386 (Sup.Ct. 1816). The Supreme Court declared that a malicious prosecution action could not be maintained
for prosecuting a civil suit in a court of common law having competent jurisdiction by the party himself in interest, unless the defendant has, upon such prosecution been arrested without cause and deprived of his liberty, or made to suffer other special grievance different from, and superadded to the ordinary expense of a defence.
The validity of this standard was reaffirmed in Bitz v. Meyer, 40 N.J.L. 252, 254 (Sup.Ct. 1878); Schneider v. Mueller, 132 N.J.L. 163, 166 (E. & A. 1944); Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 151-152 (Ch. Div. 1951), aff'd 9 N.J. 605 (1952); and The Penwag Property Co. v. Landau, 76 N.J. 595, 598 (1978). Penwag makes clear a special grievance is still required which consists of interference with one's liberty or property. Ibid. The court in Penwag also acknowledged that *147 the only difference between the criminal and civil types of case is the requirement of a special grievance in civil cases. Ibid.
We perceive a significant reason for requiring a special grievance where the prior prosecution was civil in nature. In a typical civil case, suit is instituted by filing a complaint and issuance of a summons. R. 4:2-2 and R. 4:4. There is no arrest or restraint of liberty or deprivation of a property right associated with the commencement of civil litigation, except in the rarest of cases where the writ of ne exeat or capias ad respondendum, R. 4:51-1, is employed which may involve an arrest of the defendant. The writ of replevin, R. 4:61-1, may involve deprivation of a property right, but it, too, is used infrequently. In contrast, in a typical criminal case a defendant is usually arrested and held to bail, fingerprinted, photographed and suffers all the humiliation attendant to an arrest. The arrest alone is sufficiently egregious without the need to show other special grievance.
When the trial judge granted the judgment of involuntary dismissal, he made some factual findings and legal conclusions which are persuasive. He said:
In this case, there's no evidence presented by the plaintiff that the driving license of the defendant was ever in jeopardy, or that incarceration was ever a possibility in a motor vehicle proceeding.
It's interesting to the Court in looking at the common sense of it, as to why there is this distinction between the elements for cause of action for malicious use of civil process and malicious use of criminal process lies in the almost self evidence that prejudice to a person against whom criminal offense is charged, and in certain persons charged with the commission of the crime or criminal offense. The damage to the person's reputation and holding that person up to, reputation up to being tattered and torn and defamed in such a manner would be that special grievance which would be required to be malicious abuse of civil process. There's no need to go looking for a special grievance, whereas the seeking is criminal, because the circumstances are so great and prejudice is so great to the defendant of the criminal prosecution that it would involve whether or not it imposed on that person any greater burden of proving his case.
But in a motor vehicle proceeding, you don't have that tremendous impact upon the reputation or the character of the defendant. There's no defaming of the defendant. It's simply by filing a motor vehicle complaint, summons and complaint against them. Indeed, it's quite a common experience. The Court can take judicial notice that the proceedings are done in the presence and when *148 in selecting a jury, seven or eight of our jurors say they received motor vehicle tickets in the past. It shows it is not an unusual circumstance, and it's not something that would defame or prejudice to the reputation or good reputation of the person to have a motor vehicle charge brought against them. In this present case, with the charge being simply failure to obey a traffic signal, careless driving charge, the Court would consider that this is more in the nature of a civil type of process than it would be criminal, and accordingly, would require that there be some special grievance shown in addition to the institution or procurement of the motor vehicle proceedings in the Municipal Court.
Contrary to plaintiff's assertion, the Municipal Court proceedings were not criminal in nature. His reliance on Restatement (Second) of Torts § 654, Comment a, which provides that a criminal proceeding "includes proceedings in which the individual is prosecuted for petty traffic offenses such as overtime parking" is misplaced. Section 654 refers only to criminal proceedings "in which a government seeks to prosecute a person for an offense and to impose upon him a penalty of a criminal character." Plaintiff admits that neither of the two troopers identified themselves as such. Both were traveling in an unmarked, leased automobile while wearing civilian clothing. There was no prosecuting attorney in the Municipal Court. The matters were presented by private attorneys for plaintiff and defendant Nessler. It was Nessler acting in a nongovernmental capacity and not the government that filed and prosecuted the proceedings in the Municipal Court.
Furthermore, traffic offenses in this State are not criminal offenses and are tried in the municipal courts in a summary manner. State v. Macuk, 57 N.J. 1, 9-10 (1970). Similarly, they are not considered criminal prosecutions. State v. Tropea, 78 N.J. 309, 314-315 (1978); State v. Maier, 13 N.J. 235, 277-278 (1964). During 1987, 5.3 million traffic matters were filed in the municipal courts of this State which disposed of 4.7 million of the filed cases. Approximately 1.8 million of the filed cases involved moving traffic violations exclusive of drunk driving cases. See New Jersey Judiciary Annual Report, p. 6-4 and 6-5 (1987). Our courts would cease to function if all the traffic offenses had to be treated as criminal prosecutions, *149 which of course could ultimately give rise to a malicious prosecution claim. See State v. Maier, supra, 13 N.J. at 251-252
The prosecution of traffic offenses is regarded as quasi-criminal even though a traffic offense is neither a crime nor a misdemeanor. The prosecution is treated as quasi-criminal to satisfy the requirements of fundamental fairness and essential justice to the accused. State v. Laird, 25 N.J. 298, 302-303 (1957); State v. Cooper, 129 N.J. Super. 229, 231 (App. Div.), certif. den. 66 N.J. 329 (1974). Consistent with this principle, certain rights are accorded defendants charged with certain traffic offenses: Miranda warnings are required before conducting any custodial interrogation of a suspected violator of the traffic laws, Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), State v. Leavitt, 107 N.J. 534 (1987); double jeopardy principles apply to traffic offenses, Illinois v. Vitale, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), State v. DeLuca, 108 N.J. 98, 108-110 (1987), cert. den. ___ U.S. ___, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987), State v. Dively, 92 N.J. 573 (1983); beyond a reasonable doubt standard is required to find a suspect guilty of violating a traffic law, State v. Witter, 33 N.J. Super. 1, 6-7 (App.Div. 1954), and the right to counsel is guaranteed in certain traffic cases, Rodriguez v. Rosenblatt, 58 N.J. 281, 295 (1971). But these procedural safeguards do not convert traffic offenses into criminal cases.
By the same token, the fact that a traffic summons may lead to an arrest if the alleged violator does not appear in court as directed or the person charged could be sentenced to 15 days of imprisonment along with an accumulation of violations points if found guilty, do not transform the traffic offense into a criminal case. Plaintiff's argument is based on mere potentiality rather than reality. For purposes of a malicious prosecution suit following termination of prosecution of a traffic complaint, the litmus test is what happened to the defendant in the prior prosecution of the traffic offense and not what *150 could have happened. Here, plaintiff was not arrested and there was no deprivation of any property right. Plaintiff testified that he was served with the traffic complaint while confined to the hospital. He appeared in the Municipal Court when directed and the case was disposed of without a hitch. In addition, it must be remembered that malicious prosecution "is not a favored cause of action because of the policy that people should not be inhibited in seeking redress in the courts." The Penwag Property Co., Inc. v. Landau, supra, 76 N.J. at 597-598 But see N.J.S.A. 2A:15-59.1 (c. 46 L. 1988) which now allows reasonable litigation expenses and attorneys fees in "frivolous" litigation.
We hold that a malicious prosecution claim based on the prosecution of a traffic complaint charging disregard of a traffic signal must adhere to the civil standard. We are in complete accord with the trial judge's finding that plaintiff failed to establish a special grievance. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974). Plaintiff also failed to establish that defendant Nessler's issuance of the complaint was actuated by malice. We are therefore persuaded that the involuntary dismissal of the malicious prosecution claims was proper for failure to establish a special grievance.
Still further, plaintiff argues that when the trial court denied summary judgment on Counts Three and Four in February 1987 after concluding that a special grievance could be established, that ruling became the law of the case. Because we have concluded that a special grievance was required but was not established, that pretrial determination is not supported by the trial record. Furthermore, the law of the case doctrine is discretionary insofar as it applies to the February 1987 order denying summary judgment on the malicious prosecution claim. State v. Reldan, 100 N.J. 187, 205-206 (1985). The February 1987 pretrial ruling was not made by the trial judge who had a real feel of the case. The trial judge did not follow the pretrial ruling simply because it was erroneous when viewed in the *151 context of the trial evidence. See Monmouth Real Estate v. Manville, 196 N.J. Super. 262, 273 (App.Div. 1984), certif. den. 99 N.J. 234 (1985). Also, plaintiff should have recognized the pretrial ruling was vulnerable to relitigation during the trial. Consequently, there could be no reasonable reliance on the pretrial ruling.

III

CIVIL RIGHTS ACT CLAIM
Finally, plaintiff argues that summary judgment dismissing the § 1983 claim (Counts Two and Five) as to defendants Nessler and Trump was improper. It is well settled that summary judgment should be granted when "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment as a matter of law." Judson v. Peoples Bank and Trust Company of Westfield, 17 N.J. 67, 74 (1954). The judge who dismissed the § 1983 claims found there was no genuine issue of material fact in this case for two reasons. First, the court found that defendant Nessler issued the traffic complaint to plaintiff as a private citizen and not in his capacity as a state trooper. Second, it was the traffic accident which detained plaintiff at the scene and not the issuance of the traffic complaint. Any curtailment of plaintiff's liberty associated with his appearance in the Trenton Municipal Court to answer the complaint was a de minimis interference at best for which § 1983 provides no redress. Ingraham v. Wright, 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977).
On this appeal, plaintiff contends there was a material issue of fact as to whether defendant Nessler acted in his capacity as a state trooper. This factual contention is not supported by the record. Even though Nessler was in possession of his traffic violation summons book at the time of the accident, he did not use it. The accident was investigated by the Trenton Police Department. Defendant Nessler did not identify himself as a *152 state trooper at the accident scene. He subsequently filed a complaint against plaintiff which was served upon plaintiff at the hospital by the Trenton Police Department.
The pertinent provision of the Civil Rights Act of 1871, 42 U.S.C. § 1983, provides:
[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
Prior to 1961, § 1983 did not play a significant role in vindicating constitutional and statutory deprivations because of restrictive interpretations of the Act in general and of the "under color of state state law" provision in particular. But beginning with Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), new life was breathed into the Civil Rights Act. A broad or liberal interpretation was give § 1983 which undergirds plaintiff's claim made in this case. See "Developments in the Law  Section 1983 and Federalism," 90 Harv.L.Rev. 1133 (1977); Eisenberg, "Section 1983: Doctrinal Foundations and an Empirical Study," 67 Corn.L.Rev. 482 (1982).
Even with the liberal interpretation of § 1983, a plaintiff must still establish a deprivation of a protectable right by defendant while defendant was acting "under color of" local, state or federal law. 42 U.S.C. § 1983; Flagg  Brothers, Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); Singer v. State, 95 N.J. 487, 492 (1984), cert. den. 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 64 (1984). Plaintiff had the burden of establishing that he was deprived of a protectable right while defendants were engaged in some official conduct. Ibid. For cases in which plaintiff succeeded in establishing § 1983 claims, see Singer v. State, supra (First and Fourteenth Amendment violations); Carlstadt Educ. v. Mayor & Council, 219 N.J. Super. 164 (App.Div. 1987) (First Amendment violation); Frank's Chicken House v. Mayor & Council, 208 N.J. Super. 542 (App. Div. 1986) (First Amendment violation); and Bung's Bar & *153 Grille, Inc. v. Florence Tp., 206 N.J. Super. 432 (Law Div. 1985) (Fourteenth Amendment violation). These cases and the out-of-state cases relied upon by plaintiff, allowed recovery under § 1983 because plaintiff established a constitutional or statutory deprivation by defendant while acting under color of law. Here, plaintiff was unable to establish a prima facie case that Nessler and Trump acted under color of law and that plaintiff was deprived of a protectable right. In these circumstances, summary judgment was properly granted.
The judgment dismissing the complaint is affirmed.