862 A.2d 539 (2004)
373 N.J. Super. 445
George WOZNIAK and Jacqueline Wozniak, Plaintiffs-Respondents,
v.
Samuel PENNELLA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 2004.
Decided December 7, 2004.
*541 Eugene J. Sullivan, Newark, argued the cause for appellant (Tompkins, McGuire, Wachenfeld & Barry, attorneys; Mr. Sullivan, of counsel and on the brief; Michael S. Miller and Lisa R. Marshall, of counsel).
Joseph A. Pojanowski, III, Clifton, argued the cause for respondents (Pojanowski & Trawinski, attorneys; Mr. Pojanowski and Martin P. Skolnick, on the brief).
Before Judges KING, NEWMAN and HOLSTON, JR.
The opinion of the court was delivered by
NEWMAN, J.A.D.
This appeal involves a landlord/tenant relationship in which the landlord charged rents beyond that permitted by the City of *542 Clifton's Rent Control Ordinance[1]. As a consequence, plaintiffs George and Jacqueline Wozniak, tenants, sued defendant, Samuel Pennella, landlord, for a refund of the excessive rent charges, and sought treble damages and attorney fees under the Consumer Fraud Act (CFA). After the suit was filed, defendant filed a criminal complaint against George Wozniak charging him with false swearing before the Rent Leveling Board. The matter was referred to the Passaic County Grand Jury who declined to indict. While the charge was pending Grand Jury action, defendant attempted to use the criminal complaint as leverage to coerce the dismissal of the civil action and communicated as much to plaintiff's attorney who was handling the criminal representation and was associated with the law firm representing plaintiffs in the civil suit. Plaintiffs thereafter amended their complaint to include claims for malicious prosecution and abuse of process based on defendant's malicious action in filing a criminal complaint.
On a summary judgment motion the court found that defendant committed an unconscionable commercial practice within the intendment of the CFA by charging rents beyond those authorized by the Clifton Rent Leveling Ordinance and awarded treble damages and attorney fees. Tried by a jury, a verdict in the amount of $50,000 was awarded to plaintiff for defendant's malicious prosecution and/or abuse of process conduct. Defendant appeals from the final judgment entered on April 2, 2003, raising the following arguments on appeal.
POINT I
THE JUDGMENT THAT PENNELLA VIOLATED THE CONSUMER FRAUD ACT SHOULD NOT STAND BECAUSE A LANDLORD'S VIOLATION OF A MUNICIPAL RENT CONTROL ORDINANCE IS NOT IN ITSELF A VIOLATION OF THE CONSUMER FRAUD ACT.
POINT II
THE JUDGMENT FOR MALICIOUS PROSECUTION SHOULD NOT STAND BECAUSE (1) PENNELLA HAD PROBABLE CAUSE TO FILE A CRIMINAL COMPLAINT, (2) THE TRIAL JUDGE IMPROPERLY EXCLUDED ONE OF THE TWO DOCUMENTS UPON WHICH PROBABLE CAUSE WAS BASED, AND (3) NO SPECIAL GRIEVANCE RESULTED.
POINT III
THE JUDGMENT FOR ABUSE OF PROCESS SHOULD NOT STAND BECAUSE PENNELLA DID NOTHING IN CONNECTION WITH THE CRIMINAL COMPLAINT BEYOND FILING IT WHICH COULD AMOUNT TO AN ABUSE OF PROCESS.
POINT IV
THE TRIAL JUDGE UNFAIRLY DENIED AN ADJOURNMENT OF THE TRIAL FOR A MEDICAL EMERGENCY WITH THE RESULT THAT PENNELLA COULD NOT COMPLETE HIS TESTIMONY OR FURTHER PARTICIPATE IN THE TRIAL.
POINT V
THE WOZNIAK'S ATTORNEY MADE IMPROPER REMARKS DURING SUMMATION WHICH CREATED A SERIOUS LIKELIHOOD THAT THE *543 JURY WAS IMPROPERLY INFLUENCED.
We now affirm.[2]

I.
On June 10, 1994, plaintiffs entered into a two-year lease for one unit in a four-unit building in Clifton owned by defendant, a dentist who practices in Upper Montclair. Defendant lived in one of the units until 1996 when he moved out, but commenced renting the units when he purchased the building in 1981. Initially, defendant cancelled the lease when he discovered through a credit report that plaintiffs had undergone a bankruptcy. Plaintiff had suffered a business reversal, but, however, was employed. Plaintiff's wife was a teacher in the Passaic School System. After further negotiation, defendant reconsidered and leased the unit to plaintiffs.
The lease provided for monthly rent payable in the amount of $1855, a security deposit in the amount of $2782.50, and two months of pre-paid rent totaling $3710. The record contains a notice dated May 30, 1996 which states that the monthly rent on a month-to-month basis would be increased to $2055. On July 1, 1996, plaintiffs entered into another two-year lease with defendant providing for monthly rent payable in the amount of $1955 with a cost of living increase for property taxes after one year. The 1996 lease provided for a security deposit in the amount of $3910.
Plaintiffs, who were planning on purchasing a home, sent defendant a letter on April 1, 1998 requesting a month to month tenancy after the expiration of the 1996 lease. Although defendant initially refused the request, he eventually acquiesced, charging monthly rent of $2055.
On June 29, 1998, plaintiffs filed a complaint with the Clifton Rent Leveling Board (the Board) alleging that the rent increases imposed at the end of the 1996 and the 1998 terms exceeded the amount permitted by the Clifton Rent Control Ordinance. The ordinance, in effect since October 1, 1974, was applicable to multiple dwellings, which are defined as "any building containing housing space consisting of four (4) or more dwelling units." It provides a formula for establishing appropriate rent increases utilizing the Consumer Price Index for Urban Wage Earners in Northeastern New Jersey (CPI), published by the United States Department of Labor. The ordinance also required that landlords must provide 30-day notice by certified mail of the rent increase, and the notice must include the mathematical calculations used in formulating the increase.
On October 8, 1998, a hearing was held before the Board. Although notified by certified mail, defendant did not appear for the hearing. Plaintiffs testified as to the rent increases they incurred. In response to questioning by his attorney, plaintiff responded that he had not received notice of the rent increases. When plaintiff was questioned further by the Board, it was clarified that some form of notice had been hand delivered, but it did not contain the required calculations detailing how the increase was formulated. The Board determined that the rent increases exceeded the maximum legal amount. The Board also found that since defendant had violated the ordinance by providing legally insufficient notice, he was not entitled to the CPI increases, overcharging plaintiffs $3780 in rent.
On October 23, 1998, defendant requested an additional two weeks to respond to *544 the Boards' determination. The Board granted his request, and scheduled another hearing for November 12, 1998. Defendant failed to appear at the November 12 hearing. The Board, acknowledging that they had no authority to award a monetary judgment, passed a resolution affirming their earlier decision. Plaintiffs later instituted this action to obtain a refund of the excessive rent charges and treble damages and attorney fees under the CFA.
Defendant was upset that he was sued. When plaintiffs moved out on October 27, 1998, defendant spoke to plaintiff's wife and threatened that if the lawsuit was not dropped, they would be in for a "dirty fight." Defendant boasted that he would use his financial superiority to his advantage.
On December 6, 1998, plaintiffs sent written notice to defendant requesting the return of their $3910 security deposit. Defendant claimed that the unit had damages in excess of their security deposit and refused to refund the deposit. On January 27, 1999, plaintiffs amended their complaint, adding the following counts by seeking $8056.36 (the $3910 security deposit doubled with interest pursuant to N.J.S.A. 46:8-21); and a return of $199.80 for a utility maintenance plan they had purchased at defendant's request. On April 14, 1999, defendant filed an answer and counterclaim in which he contended that he was appealing the Board's determination by complaint in lieu of prerogative writs filed against the City of Clifton on March 19, 1999. He also asserted that he had not returned the security deposit due to damage and repairs that the plaintiffs caused to the premises.
On November 2, 1999, defendant filed a criminal complaint against plaintiff charging that he committed "false swearing" during the Board hearing. Defendant was specifically referring to plaintiff's initial response to the Board that he had not received notice of the rent increases. Later, in the same hearing, plaintiff clarified that he received a notice in 1998, but it contained no formula as to how the rent increase was calculated. In response to the criminal complaint, plaintiff was summoned to appear in municipal court under threat of arrest. Plaintiff spent a half a day at municipal court, and was instructed by the judge to appear in the Superior Court in Paterson. During his appearance in Superior Court, he was given a processing form and instructed to go to the Passaic County jail for finger printing and to be photographed for a mug shot. Plaintiff testified that he was treated like a common criminal. Plaintiff's extroverted personality underwent a change and his work and health were greatly affected. He could not sleep through the night until the grand jury dismissed the charges three months later.
On November 23, 1999, plaintiffs amended their complaint to include a fifth count for malicious prosecution and abuse of process, seeking damages together with interest, counsel fees and court costs. In support of that claim, Joseph O'Neill, Esq. later testified for plaintiffs. O'Neill had represented plaintiffs in filing the complaint against defendant, and had also represented plaintiff in the criminal matter. At the time of trial, he was no longer employed by the firm representing plaintiffs. O'Neill testified that defendant, on two separate occasions, had stated that if plaintiffs dropped the civil action, he would dismiss the criminal action, and that if they pursued the civil action, he had the financial power to work the system to ensure that it was never heard.
On December 20, 1999 a hearing was held before Judge Graziano addressing the prerogative writs action filed by defendant against the City of Clifton. Defendant *545 asserted that the ordinance was inapplicable to the leased premises and that the Board hearing contained procedural defects that had denied him an opportunity to be heard. Judge Graziano rejected defendant's claims, declaring that the ordinance was applicable to defendant's four-unit residential building.
On June 5, 2000, plaintiffs filed a motion for summary judgment regarding the first and second counts of their complaint in which they sought reimbursement of the rent overcharges and treble damages under the CFA. In granting the motion, Judge Dumont ruled as follows:
Under the circumstances here, the Court finds that not only does the [CFA] apply to a landlord tenant relationship involving illegal rent overcharges, but that it applies where the defendant here affirmatively misrepresented the amount of rent due and owing and the plaintiff relied upon that affirmative act to his detriment by paying an excessive amount of rent, which under a local ordinance was illegal.
The [Board], having found that the ordinance applied to the property in question, and that rent overcharges existed for the subject period between 1996 and 1998, and that decision, having been affirmed; this, in and of itself is sufficient to indicate, as a matter of law, that the [CFA] applies and that the defendant is liable, pursuant to same, for not only the amount of the overcharge but for treble damages, interest and attorneys' fees.
Accordingly, the amount of $3,780, which is the total amount of the excess is trebled and judgment is entered in favor of plaintiffs in the sum of $11,340 plus interest, fees and costs.
Now with respect to the defendant's opposition; it should be noted, not only did he not appear, despite the fact that this is the fifth date upon which this motion was scheduled; but also that any opposition submitted by him was filed late. In that regard, a faxed letter from the defendant was received on October 3, exactly three days prior to the scheduled date of this motion.
With respect to that letter, while the Court indicated  or while the defendant indicated that he opposed the motion, nevertheless the opposition was principally that he had filed a motion before the Appellate Division for reconsideration of the dismissal of his appeal in the prerogative writ[s] matter.
On December 21, 2001, Judge Dumont awarded plaintiffs attorney fees in the amount of $8890. Defendant's motion for interlocutory review was denied by this court.
The jury returned a unanimous verdict for plaintiffs on the remaining claims and the following damages were awarded, reflecting the verdict, as set forth in the final judgment.
3. Judgment on the Third Count of the Complaint is hereby granted in the amount of $4,008.43 for Plaintiffs' security deposit that should have been returned to Plaintiffs together with an award of double damages pursuant to N.J.S.A. 46:8-21.1 et seq. for a total judgment of $8,016.86 plus reasonable attorneys fee's and costs of suit.
4. Awarding legal fees in the amount of $12,687.50 for Plaintiffs counsel's fees incurred in order to obtain return of security deposit pursuant to N.J.S.A. 46:8-21.1 et. seq.
5. Judgment on the Fourth Count of the Complaint is hereby granted in the amount of $199.80 for Defendant's breach of the agreement to reimburse Plaintiffs for the expense of the maintenance contract with PSE & G.

*546 6. Judgment on the Fifth Count of the Complaint is hereby granted in the amount of $50,000 for damages awarded to [Mr. Wozniak] for malicious prosecution and abuse of process.
7. Based on the above paragraphs, judgment plus prejudgment interest from 5/2/00 to date of $10,719.87 [ ] on the Third through Fifth Counts is hereby entered against [defendant] in favor of the Plaintiffs in the amount of $68,936.53, plus plaintiffs' attorneys are awarded their fees in the amount of $12, 687.50 for the Security Deposit Act claim.

II.
Defendant contends that the CFA should not apply to his violation of Clifton's rent control ordinance because the CFA does not specifically cover such violations and because rent control should not be regulated through both municipal ordinances and the CFA. We disagree.
The CFA is applicable to the landlord/tenant relationship. 49 Prospect Street Tenants Ass'n v. Sheva Gardens, Inc. 227 N.J.Super. 449, 468, 547 A.2d 1134 (App.Div.1988); 316 49 St. Assoc. Ltd. v. Galvez, 269 N.J.Super. 481, 491, 635 A.2d 1013 (App.Div.1994). While defendant concedes this point, he asserts that it is not applicable to every landlord's violation of an ordinance. The CFA prohibits "the act, use or employment by any person of any unconscionable commercial practice, deception [or] fraud...." N.J.S.A. 56:8-2. Violations of the act can occur as a result of an affirmative act, an omission to act, or a violation of an administrative regulation. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 605, 691 A.2d 350 (1997).
Here, Judge Dumont properly found that defendant violated the CFA through an affirmative act; i.e. raising plaintiffs' rent in excess of limitations established by Clifton's rent control ordinance. When the CFA is violated by the occurrence of an affirmative act, plaintiff need not prove that defendant intended to commit an unconscionable commercial practice. Cox v. Sears Roebuck & Co., 138 N.J. 2, 17-18, 647 A.2d 454 (1994). A showing of actual deceit or fraud is not required. Ibid.
Judge Dumont found that defendant's intention to commit an unconscionable commercial practice was evidenced through his raising the plaintiffs' rent at the end of the two lease terms in an amount violating the limitations under the rent control ordinance. Defendant also did not provide notice in the required form or containing the mandatory mathematical calculations stating how the increase was formulated.
Defendant asserts that he did not believe the ordinance was applicable to the premises. Defendant's plea of ignorance is unconvincing. Defendant was no novice in real estate investing. He began to rent out the units in the building when he purchased the property in 1981. As an experienced owner/landlord of a building with four units, he is obliged to be aware of the local rent control ordinance applicable to "multiple dwellings," especially since the ordinance had been in effect since October 1974.
Defendant further contends that the CFA is not applicable because it does not specifically establish that violations of rent control ordinances will constitute a violation of its provisions. The CFA has been liberally construed and invoked to cover a variety of commercial practices to accomplish its purpose of protecting consumers. Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 69, 494 A.2d 804 (1985); Lemelledo v. Beneficial Mgmt., 150 N.J. 255, 264, 696 A.2d 546 (1997). The Lemelledo Court held *547 that "the CFA could not possibly enumerate all, or even most, of the areas and practices that it covers without severely retarding its broad remedial power to root out fraud...." Lemelledo, supra, 150 N.J. at 265, 696 A.2d 546, (Citing Federal Trade Comm'n v. Sperry & Hutchinson Co., 405 U.S. 233, 240 92 S.Ct. 898, 903, 31 L.Ed.2d 170, 177 (1972)). Defendant's conduct is not insulated from the CFA simply because the CFA does not specifically provide that violations of a rent control ordinance may constitute a violation of its provisions.
Defendant also contends that because his relationship with plaintiffs was subject to regulation under the rent control ordinance, it should not also be subject to regulation under the CFA. Defendant relies on Lemelledo. On the contrary, the Lemelledo decision supports Judge Dumont's ruling. In Lemelledo, the Court considered whether the existence of other regulations creates an exemption to the CFA for conduct that would otherwise fall within its provisions. The Court stated:
In determining whether the existence of other regulations creates an exemption to the CFA for particular conduct that otherwise would fall within its provisions, it should ordinarily be assumed that the CFA applies to the covered practice. That assumption is appropriate because of the strong and sweeping legislative remedial purpose apparent in the CFA. The CFA explicitly states that the "rights, remedies and prohibitions" that it creates are cumulative to those created by other sources of law. N.J.S.A. 56:8-2.13.... Eliminating CFA remedies for otherwise covered practices may undermine that important and calculated legislative objective.
[(Lemelledo, supra, 150 N.J. at 268-69, 696 A.2d 546)].
In order to overcome the presumption that the CFA applies to a covered activity, a court must find:
[T]hat a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes. [The Court] must be convinced that the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes. We stress that the conflict must be patent and sharp, and must not simply constitute a mere possibility of incompatibility.
[Id. at 270, 696 A.2d 546].
Defendant provides no insight to what "direct and unavoidable conflict" exists between the rent control ordinance and the CFA. The simple fact is that there is none. There is no language in the ordinance that implies that parties who violate its provisions should not be subject to liability under other regulatory schemes. The facts here do not establish a rebuttal for the presumption that the violation of the municipal rent control ordinance qualifies as a covered practice under the CFA.
Most significantly, plaintiffs did not receive double recovery since the Board did not have authority to order a monetary award for the rent overcharges. Indeed, the CFA complements the Clifton Rent Control Ordinance by providing a legal means of redress against a violator. The CFA acts as an enforcement mechanism for the ordinance and should serve to bring landlords into compliance with the ordinance or be subject to the treble damage and attorney fees sanctions of the CFA. The laudatory purpose of the CFA of protecting consumers is thereby enhanced. Id. at 264, 696 A.2d 546.

*548 III.
Defendant asserts that the claim for malicious prosecution should not stand because he had probable cause to file the complaint against plaintiff as evidenced by the Board's resolution which was excluded from the jury. Defendant also argues that plaintiff incurred no special grievance, an element of a malicious prosecution claim. Defendant is wrong on both grounds.
To succeed on a malicious prosecution claim, a party must prove the following three elements: the criminal action was instituted by the defendant against the plaintiff without probable cause; the action was motivated by malice; and was terminated favorably to the plaintiff. E.g. Jobes v. Evangelista, 369 N.J.Super. 384, 398, 849 A.2d 186 (App.Div.2004).
Defendant asserts that he instituted the criminal action because plaintiff falsely testified that he had not been provided notice of the rent increases by defendant. In response to further questioning conducted by the Board which was all part of the hearing transcript defendant read, it was clarified that plaintiff received notice, but the notice did not contain the mandatory mathematical calculations establishing how the increase was formulated. Defendant asserts that the Board denied him CPI increases in computing the amount due plaintiffs in overcharges because they relied on plaintiff's initial statement that notice was not provided and as reflected in the resolution of the Board. The resolution has to be considered in the context of the hearing transcript which, upon review in its entirety, documents that the Board was well aware that notice was provided, but they faulted defendant for not providing legally sufficient notice. The fact that some type of notice had been communicated by defendant was evident since plaintiffs actually paid the increased amount of rent. Furthermore, while not dispositive, the grand jury's declination to indict is bottomed on a failure to establish probable cause that a criminal offense was committed by a particular individual. See State v. Gomez, 341 N.J.Super. 560, 576, 775 A.2d 645 (App.Div.), certif. denied, 170 N.J. 86, 784 A.2d 719 (2001) (probable cause is a requisite for grand jury indictment). Defendant's assertions that the Board's resolution established probable cause and was improperly excluded from the jury are rejected in view of what the hearing transcript revealed which, the trial jury had as an exhibit in evidence.
Defendant further asserts that plaintiff did not suffer a special grievance as a result of the criminal action, and that the jury charge was insufficient in that it failed to instruct the jury that a special grievance must exist for malicious prosecution to be found.
Not so. The term `malicious prosecution' is used when the underlying proceeding is criminal, while `malicious use of process' is used when the underlying proceeding is civil. Turner v. Wong, 363 N.J.Super. 186, 203-04, 832 A.2d 340 (App.Div.2003). The requirement that defendant must have incurred a special grievance is applicable only to malicious use of process claims and not to malicious prosecution claims. Ibid.; Vickey v. Nessler, 230 N.J.Super. 141, 146, 553 A.2d 34 (App.Div.), certif. denied, 117 N.J. 74, 563 A.2d 836 (1989).
A special grievance is not required in criminal actions because they usually involve constraints on a defendant's liberties. Vickey, supra, 230 N.J.Super. at 147, 553 A.2d 34. Plaintiff was not placed under arrest and held to bail, however an actual arrest is not a required element of malicious prosecution. See Jobes, supra, 369 N.J.Super. at 398, 849 A.2d 186. Plaintiff was summoned to court under *549 threat of arrest. Even without being arrested, suffering through the humiliation of being fingerprinted and photographed for a mug shot like a common criminal is a sufficient grievance. The essential inquiry is whether the proceeding could have adversely affected legally protected interests. See Toft v. Ketchum, 18 N.J. 280, 284, 113 A.2d 671 (1955). For three months plaintiff's work and health were adversely affected as he awaited the grand jury's determination on charges that, if brought to fruition, could have subjected him to severe penalties and possible incarceration.
Defendant instituted a criminal action, rendering the special grievance requirement inapplicable. Since proof of a special grievance was not required, the jury charge on malicious prosecution was correct as given. The verdict finding defendant guilty of malicious prosecution was overwhelmingly supported by the credible evidence at trial.

IV.
Defendant contends that he could not have committed abuse of process because he did nothing beyond filing a criminal complaint against plaintiff. Defendant further asserts that the trial judge provided an incomplete jury charge on this claim.
A successful claim of malicious abuse of process first requires a defendant's "improper, unwarranted and perverted use of process after it has been issued." Tedards v. Auty, 232 N.J.Super. 541, 549, 557 A.2d 1030 (App.Div.1989) (quoting Ash v. Cohn, 119 N.J.L. 54, 58, 194 A. 174 (E. & A.1937)). Defendant must also reveal, after process has been issued, an ulterior purpose in securing it by committing "further acts" which reveal a motive to coerce or oppress the plaintiff. Tedards, supra, 232 N.J.Super. at 550, 557 A.2d 1030.
Process, as used in the term "malicious abuse of process" "refers to the abuse of procedural methods used by a court to `acquire or exercise its jurisdiction over a person or over specific property.'" Ruberton v. Gabage, 280 N.J.Super. 125, 131, 654 A.2d 1002 (App.Div.1995) (quoting Black's Law Dictionary 1084 (5th ed.1979)). The term includes the "summons [or] mandate [ ] used by a court to compel the appearance of the defendant in a legal action or compliance with its orders[.]" Ruberton, supra, 280 N.J.Super. at 131, 654 A.2d 1002 (quoting Webster's Ninth New Collegiate Dictionary 937 (1986)).
The abuse of process which occurred here is defendant's filing of the criminal complaint against plaintiff. The criminal complaint triggered a chain of events that summoned plaintiff to appear in court under threat of arrest, to appear before a Superior Court judge to be referred for processing at the Passaic County jail for fingerprinting and photographing for a mug shot, and then to await the determination of a grand jury after presentation of the complaint to that body.
Defendant's ulterior motive in instituting the criminal action to oppress plaintiff was his "further acts" involving his statements to O'Neill. O'Neill testified that a week after filing the civil complaint against defendant, he received a phone call from defendant in which defendant stated:
[W]e should withdraw the [civil] Complaint. He knew how to  he said he knew how to work the system. He said that he would file appeals and Motions in such a way to make sure we never collected the money. And that he had the money himself to ensure that we would never get this matter heard.
O'Neill went on to testify that prior to the hearing on the prerogative writs action *550 filed by defendant against the City of Clifton:
[Defendant] again said to me that we should withdraw [the civil] Complaint and the [criminal] Complaint would go away and that he would continue to file pleadings and Motions to ensure that we never had this case heard.
O'Neill's testimony was corroborated by plaintiff.
One of the obvious purposes of the criminal complaint filing was to enable defendant to employ leverage against plaintiffs to dismiss the civil complaint brought against him. While this act on defendant's part did not involve a specific form of court process, it was no less egregious because it was verbally communicated by defendant. We further note that this may be one of those rare instances where the same initial court process can support both a malicious prosecution and abuse of process claims. Indeed, the verdict recognized as much by indicating that the damage award could be based on both claims or either claim as framed by the interrogatory submitted to the jury on the verdict sheet. The proofs were identical; the damage award can be sustained in either case.
Defendant relies on Ruberton v. Gabage, supra, in support of his contention. Ruberton is distinguishable. There, the plaintiff alleged that during a settlement conference on a wrongful termination claim, defense counsel threatened him with filing a criminal action for alleged misconduct engaged in during his employment. Ruberton, supra, 280 N.J.Super. at 129-30, 654 A.2d 1002. Plaintiff further alleged that defense counsel stated they would not file the criminal suit if he dropped the wrongful termination action. Ibid. The court found that no abuse of process occurred since no process had in fact been issued the defense had never instituted the criminal action. Id. at 131-32, 654 A.2d 1002. Here, process had been issued as evidenced by defendant's filing of the criminal complaint, which summoned plaintiff to appear in court under threat of arrest, to appear in Superior Court for criminal processing at the Passaic County Jail, and the presentation of the case before a grand jury.
Likewise, Baglini v. Lauletta, 338 N.J.Super. 282, 768 A.2d 825 (App.Div.2001), is also distinguishable. There, a real estate developer filed a SLAPP suit against objecting residential neighbors to an office condominium project in their neighborhood. In response the neighbors filed a suit against the developer for abuse of process and malicious use of process. This court rejected the contention that settlement efforts which included dropping the SLAPP suit constituted "further acts" for the abuse of process claim. Id. at 296-97, 768 A.2d 825. Here, the context is criminal, not a civil case. The difference is one of kind, not degree. The public interest requires that a person who unlawfully abuses the criminal process by using it as leverage to seek the dismissal of a civil case has engaged in further acts which sustains an abuse of process claim.
Defendant also asserts that the jury charge issued by the trial judge on the abuse of process claim was misleading. He asserts that the trial judge's explanation of the phrase "misapplication of procedure in a manner not contemplated by law" to the factual context of the case was inappropriate. The trial judge instructed the jury following the Model Civil Jury Charge 3.18 for abuse of process. Footnote one of that model charge expressly authorizes judges to explain the subject phrase in the factual context of the case. The trial judge did just that. Defense counsel made no objection to the instruction during trial. We discern no error, much less plain error "capable of producing *551 an unjust result." Mogull v. CB Commercial Real Estate, 162 N.J. 449, 464, 744 A.2d 1186 (2000).
Affirmed.
NOTES
[1] Rent Control Ordinance and Rent Leveling Ordinance are used interchangeably throughout this opinion.
[2] We have truncated this opinion for publication purposes, deleting those portions which do not present novel issues.