**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2486-19T1

JERARD J. MURPHY,

     Plaintiff-Appellant,

v.

SPARTA TOWNSHIP POLICE
DEPARTMENT, SERGEANT
JOSEPH PENSADO, OFFICER
DANIEL ELIG, SERGEANT
ADAM CARBERY, and
OFFICER RICHARD SMITH,

     Defendants-Respondents.

_____

Argued November 30, 2020 – Decided December 22, 2020

Before Judges Fasciale and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0068-18.

George T. Daggett argued the cause for appellant.

Brent R. Pohlman argued the cause for respondent (Methfessel & Werbel, attorneys; Brent R. Pohlman, of counsel and on the brief; Ashley E. Malandre, on the brief).

PER CURIAM

Plaintiff Jerard J. Murphy appeals from a December 9, 2019 order granting summary judgment to defendants Sparta Township Police Department (Sparta P.D.), Sergeant Joseph Pensado, Officer Daniel Elig, Sergeant Adam Carbery, and Officer Richard Smith (collectively, defendants), and a February 21, 2020 order denying his motion for reconsideration. We affirm.

Plaintiff, a member of the Sparta Township governing body, sued defendants for violation of his civil rights, false arrest, malicious use of process, and conspiracy[1] arising from a motor vehicle stop of plaintiff's car by Officer Elig of the Sparta P.D. The facts are based on the testimony presented during a municipal court proceeding related to the motor vehicle stop and deposition testimony from plaintiff's civil suit against defendants.

On the evening of February 12, 2016, plaintiff went to a local restaurant in Sparta. According to the restaurant bill, plaintiff opened a tab at 7:43 p.m., ordered three beers and a salad, and closed the tab at 10:13 p.m. Plaintiff left the restaurant around midnight. Before driving home, plaintiff spent ten to

---

[1] Plaintiff asserted other claims against defendants which were either withdrawn or dismissed and were not the subject of this appeal.

A-2486-19T1

fifteen minutes outside the restaurant, "walking back and forth talking to a friend." Although he "hadn't had a drink for a while[,]" plaintiff "wanted to make sure [he] was thinking clearly" before driving. It had begun to snow lightly when plaintiff left the restaurant.

Officer Elig was on duty during the early morning hours of February 13, 2016, monitoring traffic on Mohawk Avenue. He noticed a vehicle "traveling at a high rate of speed," activated his radar gun, and obtained a reading of thirty-four miles per hour despite the posted speed limit of twenty-five miles per hour. Officer Elig continued to follow the car and observed the vehicle swerve over the fog line twice.[2] The second time the car crossed the fog line, Officer Elig noted it took the driver about twelve seconds to return to the proper lane of traffic. The officer pulled the car over after locating a safe spot to proceed with a motor vehicle stop.

Approaching the vehicle, Officer Elig "detected the strong odor of an alcoholic beverage emanating from the interior of the vehicle." While the driver searched for his documentation, the officer noted his motions were "slow and deliberate." The documentation identified plaintiff as the driver of the vehicle.

---

[2] When Officer Elig saw the car cross the fog line, he activated the motor vehicle recorder in his patrol car.

 A-2486-19T1

Officer Elig advised plaintiff he was stopped for speeding and failing to maintain his lane. The officer asked if plaintiff "had consumed any alcoholic beverages . . . ." Plaintiff replied he had three beers. Officer Elig noticed plaintiff's eyes were "bloodshot" and "watery," "his eyelids were droopy[,]" his "face was flushed[,] and his speech was slow, badly slurred, and incoherent at times."

Officer Elig asked plaintiff to step out of the car, and plaintiff "fell backward into the driver[']s door and grabbed the door for stability." The officer noted "the strong odor of an alcoholic beverage emanating from [plaintiff's] mouth as he spoke." Prior to conducting any field sobriety tests, Officer Elig asked if plaintiff had any ailments which would impede his ability to perform the tests. Plaintiff explained he suffered from peripheral neuropathy, which affected his balance, but "would try" the tests.

Sergeant Pensado arrived while Officer Elig administered the sobriety tests. Plaintiff failed each test. Based on the failed field sobriety tests, his observation of plaintiff's car crossing the fog line, the odor of alcohol, plaintiff's admission to consuming alcohol, plaintiff's physical appearance, and his police training and experience, Officer Elig determined plaintiff operated his vehicle while under the influence of alcohol and arrested plaintiff.

At the police station, Officer Elig administered a breathalyzer test, "yield[ing] a [blood alcohol content] reading of .13 [percent]." Plaintiff was charged with driving while intoxicated, speeding, careless driving, failing to maintain a proper lane, failing to produce a valid insurance card, and having an obstructed license plate.

While he as at the police station, plaintiff asked if Officer Elig "was a re-hire." According to the officer, plaintiff "was referring to 2011 when the town laid off five [p]olice [o]fficers, including [himself], for budgetary reasons." Officer Elig responded affirmatively.[3] According to the officer, plaintiff "shook his head slowly in an up and down motion" and stated, "Your first name is Dan right?"

On February 13, 2017 and May 22, 2017, plaintiff appeared before the Hopatcong Municipal Court for a probable cause hearing on the charges. The municipal court judge concluded Officer Elig had probable cause to stop plaintiff's car, finding the officer "had a reasonable and articulable suspicion that [plaintiff] had violated a motor vehicle law" based on speeding, crossing the fog line, and obstructing his license plate. The judge concluded, "Any one

---

[3] As part of a reduction in force, Officer Elig was laid off from the Sparta P.D. effective May 9, 2011 but rehired on April 1, 2013.

A-2486-19T1

of these offenses alone satisfied the reasonable and articulable suspicion standard . . . ." Ultimately, all charges were dismissed except for the obstructed license plate, and plaintiff received a $135 fine for that violation.

Despite the municipal court judge's findings, plaintiff believed Officer Elig stopped him as part of a conspiracy within the Sparta P.D. This belief was based on information plaintiff subsequently learned from two different individuals. One individual, Mike, dined at the restaurant the same time as plaintiff on February 12, 2016. Mike told plaintiff a retired Sparta police officer and his wife were at the restaurant and spoke about plaintiff. The other individual, Chris, also heard a conversation between the retired Sparta police officer and his wife that evening. Initially, plaintiff claimed Chris told him "[plaintiff] was being set up over a period of time." When asked for specific details regarding the conversation overheard by Chris, plaintiff clarified, "Well, just that he had heard my name."

Plaintiff believed the retired Sparta police officer notified defendants when plaintiff was leaving the restaurant so he would be arrested in retribution for the prior reduction in force. However, plaintiff did not personally hear any

conversations between the retired Sparta police officer and his wife. Nor did plaintiff see either using a cell phone that evening.[4]

Plaintiff theorized the Sparta P.D. acted in concert to retaliate against him for the 2011 layoffs. According to plaintiff, the Sparta Township manager made the decision "to conduct a reduction in force." Plaintiff testified his role in approving the Sparta Township manager's decision was limited to authorizing the manager to take action to reduce the municipality's budget, and plaintiff lacked any input regarding specific layoffs.

Given his non-participation in layoff of police officers, plaintiff was asked why defendants would set him up. Plaintiff responded, "I don't know that they were all in on a conspiracy, I think it was initiated by [the retired Sparta police officer]." When probed why the retired Sparta police officer would participate in such a conspiracy, plaintiff said he did not know, but "people overheard [the retired officer] talking. [Plaintiff] didn't draw that conclusion, other people did."

The testimony of the officers deposed in plaintiff's civil suit was consistent with plaintiff's testimony regarding the events leading to the arrest.

---

[4] The two individuals who reported overhearing conversations between the retired Sparta police officer and his wife were not deposed. Nor did plaintiff submit an affidavit or certification from either individual regarding the statements they overheard in the restaurant.

The only additional information involved a text message from the retired Sparta police officer to Officer Smith while plaintiff was at the restaurant. Paraphrasing the text message,[5] Officer Smith testified the message said "[plaintiff] was in the St. Moritz and he was under the influence of alcohol." Officer Smith relayed the information to Sergeant Pensado, drove through the restaurant's parking lot "to investigate the allegation," and "saw [plaintiff's] vehicle parked out front . . . ." Officer Smith then "continued on [his] day." According to Sergeant Pensado, Officer Smith received the text message sometime between 8:30 p.m. and 9:30 p.m. Sergeant Pensado then "instructed the squad to make sure that before [they] took any action that it was validated with sight or [an] independent motor vehicle violation" so that they were not simply reacting to a tip.

Plaintiff filed a civil suit in February 2018 and amended his complaint on May 18, 2018. He alleged defendants violated his civil rights and the New Jersey Constitution, "attack[ed] . . . the governmental process in the Township of Sparta and singled out the [p]laintiff for having taken legislative action for the betterment of the people of Sparta[,]" engaged in "malicious prosecution,"

---

[5] The original text message was unavailable because Officer Smith bought a new cell phone prior to his deposition.

and committed false arrest. Plaintiff claimed defendants, acting in retribution for the reduction in force several years earlier, "set out to arrest [p]laintiff on the night of February 12, 2016 and did so notwithstanding the absence of reasonable suspicion or probable cause."

After completing discovery, defendants moved for summary judgment. The motion judge heard oral argument on November 22, 2019 and granted defendants' motion in a December 9, 2019 order and accompanying thirty-three-page written decision. Plaintiff filed a motion for reconsideration, which was denied by the judge in a February 21, 2020 order and attached fourteen-page written decision.

In his written decisions, the motion judge explained why he rejected plaintiff's allegations in their entirety. The judge concluded "the majority of evidence concerning the intentions of [d]efendants is mere speculation." He further explained plaintiff put forth no evidence to support his claim defendants acted in furtherance of a conspiracy. The judge held:

> In light of the evidence before the [c]ourt, the [c]ourt concludes that no reasonable jury could conclude there was not probable cause for the motor vehicle stop of [p]laintiff. Therefore, the [c]ourt finds the existence of probable cause to pull over [p]laintiff and the failure of [p]laintiff to put forth any disputed material facts to that point, deems summary judgment appropriate . . . .

The judge concluded Officer Elig stopped plaintiff's car based upon a reasonable and articulable suspicion that plaintiff committed motor vehicle violations. He also determined the issue of probable cause could be resolved without submitting the question to a jury because the underlying probable cause determination was not in dispute.

After reviewing the motor vehicle recording footage from Officer Elig's patrol car the night of plaintiff's arrest, the judge determined there was "irrefutable proof that [p]laintiff crossed over the right white fog line on two separate occasions." Despite the light snow fall, the judge found the fog lines were clearly visible on the recording. In addition, the judge noted Officer Elig relied on his personal observation, as well as a radar gun, to determine plaintiff's car exceeded the posted speed limit. Based on these undisputed facts, the judge "conclude[d] there was probable cause sufficient to defeat the instant claims."

The motion judge also rejected plaintiff's argument the time stamps on the motor vehicle recording and dispatch call logs were perfectly synchronized and thus the timing did not support a finding of probable cause. The judge found the timing was not perfectly synchronized because, as Officer Elig explained, there was a time difference between an officer's radio transmission to dispatch and dispatch's manual entry of a time stamp on the call log.

In reviewing the evidence in the light most favorable to plaintiff, the motion judge concluded "the majority of [the] evidence concerning the intentions of the [d]efendants is mere speculation. However, . . . even if Officer Elig's subjective intentions were clouded by ill-will, there was other objectively reasonable evidence to pull over [p]laintiff as established by both the [m]unicipal [c]ourt record and the [motor vehicle recording] submitted with the instant motion." He explained, "[p]laintiff has not put forth evidence indicating the Sparta Police Department 'officially sanctioned' or had a 'de facto' policy to seek retribution for the reduction in force."

The motion judge also rejected plaintiff's argument that "every one of the facts stated by [d]efendants are disputed." Plaintiff's conclusory allegations regarding Officer Elig's testing of and using the radar gun during a snow event were determined by the judge to be "non-material issues" because aside from speeding, crossing the white fog line was itself a sufficient reason to stop plaintiff's car. He reiterated, "[p]laintiff put[] forth multiple conclusory allegations which ha[d] no basis in the record." The judge noted, "[p]laintiff testified he ha[d] no personal knowledge that the [d]efendants engaged in a conspiracy against him" and "that no one, other than his lawyer, informed him of the existence of a conspiracy between the [d]efendants."

As the judge noted, plaintiff could not simply point to any fact in dispute to survive a motion for summary judgment. He wrote:

> [N]othing in the record establishes there is a dispute concerning any fact material to such a finding of a reasonable or articulate suspicion. Plaintiff's contention are neither material facts nor are most of them supported by the record before this [c]ourt. Thus, it is irrelevant whether Officer Elig harbored ill-will towards [p]laintiff, which is doubtful based upon the record, because there was other objectively reasonable evidence to justify the stop.

In the absence of any relevant and material factual disputes, the judge deemed summary judgment appropriate.

In denying reconsideration, the motion judge repeated and incorporated his summary judgment ruling and held plaintiff failed "to meet the standard for reconsideration." The judge concluded:

> [P]laintiff merely reargues the issues of reasonable suspicion and synchronization, among others. This [c]ourt finds that there are no new or additional facts before this [c]ourt that were unavailable to the parties at the time the prior motion was considered. Nor does [p]laintiff cite to any previously unavailable legal authority.

On appeal, plaintiff argues the judge failed to correctly apply the substantive law regarding probable cause and the law governing motions for summary judgment. We disagree.

12                                                          A-2486-19T1

Our review of an order granting a party's motion for summary judgment "is premised on the same standard that governs the motion judge's determination." RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "[W]e view the evidence in the light most favorable to the non-moving party" to determine whether genuine disputes of material fact exist. Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 256 (2018) (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012)); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Summary judgment is appropriate when the evidence "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The evidence offered by the opposing party cannot simply "point[] to any fact in dispute." Ibid. An opposing party who offers no substantial or material facts in opposition to the motion cannot complain if the court takes as true the uncontradicted facts in the movant's papers. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954).

We first consider plaintiff's contention there were genuine issues of material fact that precluded the entry of summary judgment. We disagree. Plaintiff produced no evidence or facts in support of his claims against defendants other than speculation proffered by his attorney and unsubstantiated hearsay statements by other persons.

Plaintiff claimed Officer Elig lacked probable cause to stop his car. The United States Supreme Court has held "certain seizures are justifiable . . . if there is articulable suspicion that a person has committed or is about to commit a crime." Florida v. Royer, 460 U.S. 491, 498 (1983). New Jersey courts have clarified "[a]n investigatory detention is permissible 'if it is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity.'" State v. Chisum, 236 N.J. 530, 545-46 (2019) (quoting State v. Pineiro, 181 N.J. 13, 20 (2004)). Such a stop "may not be based on arbitrary police practices, the officer's subjective good faith, or a mere hunch." State v. Coles, 218 N.J. 322, 343 (2014) (quoting State v. Shaw, 213 N.J. 398, 411 (2012)). To determine whether reasonable suspicion existed, a court must consider the totality of the circumstances, viewing the "whole picture" rather than taking each fact in isolation. State v. Nelson, 237 N.J. 540, 554-55 (2019).

Plaintiff argued a jury must decide whether Officer Elig had a reasonable or articulable suspicion to stop his car. In support of this argument, plaintiff relied on State v. Bruzzese, 94 N.J. 210 (1983), and State v. Kennedy, 247 N.J. Super. 21 (App. Div. 1991). According to plaintiff, the motion judge failed to consider these cases in rendering his decision.[6]

In Bruzzese, our Supreme Court indicated "the proper inquiry for determining the constitutionality of a search-and-seizure is whether the conduct of the law enforcement officer who undertook the search was objectively reasonable without regard to his or her underlying motives or intent." 94 N.J. at 219. The Court held:

> In discarding the general use of a subjectivity analysis, we do not condone searches that are not undertaken to further valid law enforcement aims. For example, we afford no legal protection to police officers who invade the privacy of citizens as a means of racist or political harassment. Such searches would be unconstitutional, not because of the police officer's subjective motives, but because, viewed objectively, the searches do not reasonably advance the legitimate goals of law enforcement.
>
> [Id. at 226.]

---

[6] Contrary to plaintiff's contention, the judge's written decisions contained a discussion and analysis of both cited cases and explained why the facts in those cases were inapplicable to plaintiff's case.

A-2486-19T1

We reaffirmed this holding in <u>Kennedy</u>.  "The fact that the officer does not have the state of mind hypothesized by the reasons which provide the legal justification for the search and seizure does not invalidate the action taken, so long as the circumstances, viewed objectively, support the police conduct." <u>Kennedy</u>, 247 N.J. Super. at 28 (citing <u>Bruzzese</u>, 94 N.J. at 220).  A seizure will be deemed unconstitutional only if "the claim is made that a police agency has embarked upon an officially sanctioned or de facto policy of targeting minorities for investigation and arrest."  <u>Id.</u> at 29-30.

Here, plaintiff failed to produce any credible evidence demonstrating "political harassment," warranting an evaluation of Officer Elig's subjective intent for stopping plaintiff's car.  The motor vehicle recording footage from the officer's patrol car clearly showed plaintiff cross the white fog line twice in violation of N.J.S.A. 39:4-88(b), which provided Officer Elig with a reasonable or articulable suspicion a motor vehicle violation had been committed to justify stopping plaintiff's car.

We next consider plaintiff's claim for malicious use of process.  "[W]hen the underlying proceeding is civil rather than criminal, or based on traffic . . . charges–involving none of the physical constraints ordinarily attendant to the criminal  process–the cause of action is known as malicious use of process and

requires proof of a deprivation of liberty or 'other special grievance.'" Turner v. Wong, 363 N.J. Super. 186, 203-04 (App. Div. 2003) (quoting Vickey v. Nessler, 230 N.J. Super. 141, 146 (App. Div. 1989)). A successful claim for malicious use of process requires the claimant to prove the civil counterpart to the four elements of malicious prosecution: "(1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." LoBiondo v. Schwartz, 199 N.J. 62, 90 (2009) (citing Lind v. Schmid, 67 N.J. 255, 262 (1975)).

Here, plaintiff was unable to demonstrate the required elements to support his claim for malicious use of process. The undisputed evidence from the motor vehicle recording demonstrated Officer Elig had probable cause to stop plaintiff's car. Nor did plaintiff present any evidence that prosecuting him for violation of the motor vehicle laws was actuated by defendants' malice. Rather, plaintiff proffered only speculation and hearsay to support his claim. Because there was probable cause to prosecute and the absence of malice, plaintiff could not sustain a claim for malicious use of process, and the motion judge properly granted defendants' motion for summary judgment.

A-2486-19T1

Because we are satisfied the motion judge correctly granted summary judgment, dismissing plaintiff's claims in their entirety, the judge did not err in denying plaintiff's motion for reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2486-19T1