115 N.J. Super. 15 (1971)
277 A.2d 899
JOHN C. DeGROOT AND ANNA DeGROOT, HIS WIFE, PLAINTIFFS,
v.
JOE MUCCIO, INDIVIDUALLY AND AS COUNTY INVESTIGATOR FOR THE COUNTY OF PASSAIC, NEW JERSEY; COUNTY OF PASSAIC; JOHN THEVOS, INDIVIDUALLY AND AS COUNTY PROSECUTOR FOR THE COUNTY OF PASSAIC; ROBERT KESSLER, INDIVIDUALLY AND AS A FORMER ASSISTANT PROSECUTOR FOR THE COUNTY OF PASSAIC; CHARLES CARROLL, INDIVIDUALLY AND AS A FORMER ASSISTANT PROSECUTOR FOR THE COUNTY OF PASSAIC; JACQUELINE NATOLI AND EDWARD LENNEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 17, 1971.
*17 Mr. John Thevos argued the motion to dismiss the complaint pro se and as attorney for defendant Joe Muccio.
*18 Mr. Robert Kessler argued the motion pro se.
Mr. Charles Carroll argued the motion pro se.
Mr. William J. Cleary, Jr. joined in the motion for defendant County of Passaic (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys)
Mr. A. John Blake argued the motion for plaintiffs (Messrs. Simon, Denstman & Noonan, attorneys).
GORDON H. BROWN, J.S.C.
Plaintiffs filed an original complaint alleging against each of the defendants a wrongful participation in the prosecution of plaintiff John C. DeGroot who, with two codefendants, was tried for the murder of Gabriel DeFranco and acquitted.
Before the court is a motion brought by defendants John Thevos, Robert Kessler, Charles Carroll and Joe Muccio (so impleaded as "Joe") to dismiss the action on the grounds that the first three, as prosecutor and assistant prosecutors, respectively, are immune from civil liability; that Muccio, as confidential aide to the prosecutor, has derivative immunity, and that the complaint fails to state a claim for which relief can be granted.
The complaint initially was in seven counts. It is in the first of them that the main charge is made. The gist of it is that two professed eyewitnesses (defendants Edward Lenney and Jacqueline Natoli) "lied" when they implicated DeGroot; that they lied "in fact" because his guilt "was impossible," and that the prosecuting defendants "knew" this to be so but nevertheless used the perjury "to cover up" some investigational mistakes.
On the hearing of the motion to dismiss, the court determined that the complaint was defective in the first count because all allegations were stated in terms of conclusions. Conduct was described only in language such as the following: *19 "The * * * defendants refused to check * * * the statements," they "refused to bring before the court their knowledge," and "The various statements * * * were accepted as true."
R. 4:5-2 requires that a complaint "shall contain a statement of the facts on which the claim is based." Some outline of a structure within which plaintiffs' theory places defendants must appear so that conduct rather than successive states of mind is alleged. There ought to be a showing of "the constituent events of the offense and the actors involved or concerned in those events" (State v. Sullivan, 33 N.J. Super. 138, 143 (App. Div. 1954))  to use the criminal bill of particulars analogy, which seems to be appropriate in this special case.
An amended complaint has now been filed with the court.
Defendants have reacted with a demand that it should be stricken or impounded because it is "so grossly scandalous." R. 4:6-5 is invoked but it does not apply. The precise objection is that the allegations amount to "false and scurrilous vilification." The quality of plaintiffs' allegations cannot be tested by the pending motion wherein all well-pleaded facts must be accepted as true. No matter how the language may vilify defendants, it will not be "scandalous" within the meaning of the cited rule unless it is irrelevant. Chew v. Eagan, 87 N.J. Eq. 80, 81 (Ch. 1916). Everything that plaintiffs say in the amended complaint is relevant to the subject of their grievance. There is no justification for striking or impounding the complaint. In any event, it presents substantially the same material already publicized in the DeFranco and Kavanaugh murder trials, in the Bailey letter to Governor Hughes, as well as in the complaint filed against the movant defendants, and others, in the United States District Court. The motion to strike or to impound the amended complaint is denied.
The amended complaint presents an eighth count wherein there is further particularization which is expressly made referable to all of the first seven. Of relevance to the first *20 count are allegations which, with their implications, present subject matters as follows:

(1)
Muccio, after a threat to "frame" DeGroot, "provided" Lenney (who knew nothing directly about it before) with "information" concerning the DeFranco murder. Kessler and Carroll, with Muccio, promised money to Lenney and his release from prison in return for testimony he gave against DeGroot, as an alleged eyewitness, which testimony they knew was false.

(2)
Natoli "falsely and maliciously implicated" DeGroot in the murder of Judith Kavanaugh (an integral part of the DeFranco murder case, according to the State) and Muccio "supplied [her with] information concerning certain pornographic films" for testimony before the grand jury which he, Carroll, Kessler and Thevos knew was false.

(3)
Kessler "harrassed, bullied and intimidated" witnesses able to prove that Lenney could not have been at the DeFranco murder scene.

(4)
In putting DeGroot at a place in the Kavanaugh case, Natoli lied to the "full knowledge" of Muccio, Thevos, Kessler and Carroll because he was at his police station "as the police log and witnesses corroborated."

(5)
Lenney recanted his false testimony, but when this "was brought to the attention of Muccio and Thevos, Lenney was forced to withdraw his recantation and Mr. Dowd [an attorney engaged specially by Thevos to try the case and to whom the recantation was allegedly made] was threatened with physical harm and disbarment."
The movant defendants rely upon the rule of judicial immunity and its application covering conduct in the realm of the public prosecutor. Although insisting that the amended complaint fails to state a claim for which relief can be granted, they contend that even if there is such a statement, they are immune "because the said alleged acts were not done clearly outside their authority or jurisdiction."
In an early decision, the Court of Errors and Appeals recognized the need to put the judge beyond the reach of "every malignant or disappointed suitor." It was said in Grove v. Van Duyn, 44 N.J.L. 654 (E. & A. 1882):
*21 The doctrine that an action will not lie against a judge for a wrongful commitment, or for an erroneous judgment, or for any other act made or done by him in his judicial capacity, is as thoroughly established as are any other of the primary maxims of the law. * * * That it exists in this state in its fullest extent, has been repeatedly declared by our own courts. [at 656]
But it has been said that there is no authoritative extension of the shield to produce a comparable protection for officials in the office occupied by defendants:
It is to be noted that in some jurisdictions a county prosecutor is not subject to a civil suit for damages at the hands of an aggrieved citizen * * * though that point has not been passed on here. [State v. Winne, 12 N.J. 152, 170 (1953)]
Even if no New Jersey Supreme Court opinion has yet explored the problem, impressive authorities mark out the ground upon which the court will doubtless stand. In Bauers v. Heisel, 361 F.2d 581 (3 Cir.1966), cert. den. 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457, it was said:
* * * we believe that both reason and precedent require that a prosecuting attorney should be granted the same immunity as is afforded members of the judiciary. [at 589]
According to the Restatement, Torts, § 656, at 392 (1938):
A public prosecutor acting in his official capacity is absolutely privileged to initiate or continue criminal proceedings.
In 1 Harper and James, The Law of Torts, § 4.3 at 305 (1956), the following is stated:
Authority is not clear on the question whether an attorney at law is amenable to an action for malicious prosecution. If the attorney is an officer of the state such as a prosecuting attorney or attorney general, it seems that he is protected by an absolute privilege and his immunity is indefeasible.
There is really no clash in the briefs on the point. Plaintiffs say: "We do not question the basic premise of the defendants *22 that normally a Prosecutor is immune from civil liabilities * * *." And while plaintiffs concede that the prosecutor must have a degree of protection, defendants, on their part, acknowledge that the scope of it is not absolute: "* * * like the immunity of a judge, the immunity of a prosecutor is not without some limitation; * * *." Where they divide is in a definition of how the immunity can be lost. According to defendants, it happens when the prosecutors' acts "are clearly outside their jurisdiction"; plaintiffs argue that immunity is gone at the point where what the prosecutor does is not "an integral part of his job." Indeed, both sides in the controversy quote the same passage from Earl v. Winne, 14 N.J. 119 (1953):
They [the prosecutor and his assistants] have the benefit of the presumption that they act legally in the discharge of their public duty, but if the presumption is overcome by convincing proof that they acted in excess of and distinct from their required official duty for personal reasons of their own, then for such acts they are civilly liable. [at 134]
Quite evidently, the dispute cannot be resolved with the help of the foregoing statement of law if it is deemed to support both arguments. In addition, it should be noted that the classic exposition of the judicial immunity doctrine in Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871), does not speak in terms of presumed validity or lack of excess deviation from official duty. To the contrary, the court alluded to illegal conduct in substance:
* * * for malice or corruption in their action while exercising their judicial functions within the general scope of their jurisdiction, the judges of these courts can only be reached by public prosecution in the form of impeachment, or in such other form as may be specially prescribed. [13 Wall at 651, 80 U.S. at 651]
And as to excessive action it was said:
* * * judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are *23 in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. [at 651]
Both of these fragments from Bradley make "jurisdiction" a minimal area of protection. Defendants contend that they acted within its ambit because
The defendant, John Thevos, as prosecutor, had exclusive jurisdiction over the criminal business of the County of Passaic at the time of the acts alleged to have been committed. The murder of Gabriel DeFranco was a crime committed in Passaic County and within the exclusive jurisdiction of the defendant, John Thevos. N.J.S.A. 2A:158-4.
Thus defendants conceive of "jurisdiction," for present purposes, as a matter of relevance  i.e., jurisdictional activity is anything bearing on the DeFranco subject matter. Plaintiffs, on the other hand, see "jurisdiction" as something qualitative, so that it exists or not depending upon whether a particular action is good or bad:
* * * he [the prosecutor] must use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the law. * * * Bad faith is ascribed to the defendants' acts and punitive damages are sought. That alone, using the definition of reasonable and lawful, takes the allegations out of the scope of defendants' jurisdiction.
The scope of prosecutorial immunity can be defined better by looking at what courts have tolerated or condemned rather than by collecting their legal maxims for an elaboration of this sort of debate. A review of decisional law on the subject shows that the persistence and durability of the defense is remarkable. It is not easy to find instances where it has been denied.
In Watts v. Gerking, 111 Or. 641, 222 P. 318 (1924), the Oregon Supreme Court reviewed the dismissal of an action where plaintiff sued for malicious prosecution at the hands of several persons, including defendant district attorney, and where the latter had been held to be exempt from liability *24 because of his official capacity. The complaint alleged that, as district attorney, he knew he was promoting a false charge because he had actual knowledge of innocence and yet "instigated others to swear falsely against the plaintiff, knowing at the time that the charge itself was a false, fictitious, and trumped-up one" (as reported by the related opinion in 111 Or. 641, 228 P. 135, 142 (1924)).
The dismissal was reversed with the following observation:
As the statute defining the powers and prescribing the duties of district attorneys is for the protection of the public, it should be liberally construed to effectuate the purpose of its enactment, and wide latitude should be given to the exercise of discretion under it. But from this it does not follow that a district attorney is not to be held accountable in a civil action for damages at the suit of an injured party for maliciously causing the arrest of such party for a pretended offense, which, at the time of the arrest, he knew had not been committed at all; for in such case the district attorney is not acting in line of his duty or within the scope of his authority. [222 P. at 321]
But in a decision published six months later the court repudiated its position on the merits following a rehearing. The opposite and superseding opinion has been reported in 111 Or. 641, 228 P. 135, where the court said:
It is almost inconceivable that any district attorney should commit the offense of subornation and perjury, as charged by plaintiff, and thus subject himself to criminal prosecution. * * * A corrupt district attorney * * * should and would be hurled from power by an aroused public conscience. * * * The public policy of the state affords ample protection to the innocent, and a prosecutor's endeavors should not be weakened by backfires in the nature of malicious prosecution. [228 P. at 141]
Lewis v. Brautigam, 227 F.2d 124 (5 Cir.1955), involved a claim that defendant state's attorney conspired with others to force plaintiff to plead guilty by intimidations and threats, long questioning and promises of reward. The defense of immunity was rejected:
If the State's Attorney ordered and directed the officers to force the plaintiff to plead guilty, then certainly he is no less liable than *25 are those who carried out his instructions. It would be wrong to hold the officers liable but the State's Attorney exempt. On motion to dismiss, it cannot be held that such acts were either within the scope of his jurisdiction as State's Attorney, or were authorized by law. [at 129]
And yet on at least an equal level of allegation and where the court was sensitive to what it called plaintiff's "outraged feeling" immunity was upheld in Cawley v. Warren, 216 F.2d 74 (7 Cir.1954). A civil action was brought against the state's attorney, his assistant and the foreman of a grand jury. A conspiracy was charged by which plaintiff was prosecuted with knowledge that she had committed no crime and through which conspiracy certain indictments were procured without competent witnesses or evidence of any kind. The court below had dismissed the complaint on the ground, among other things, that the alleged actions were taken by defendants in their official capacities. The dismissal was affirmed because, in the name of immunity and "as a matter of public policy, such an injured person is without relief in a civil proceeding." (At 76)
Thus, the Lewis view was out of joint with the result reached by a coordinate appellate court the year before and which view the court criticized in a later opinion. The case was Stift v. Lynch, 267 F.2d 237 (7 Cir.1959), where the District Court had dismissed a complaint against a state's attorney and his assistant who were accused of violating plaintiffs' civil rights. It was held that the dismissal was proper notwithstanding plaintiffs' reliance on the Lewis decision. In disposing of Lewis as not controlling, the court commented:
It must be admitted this case is authority for the view expressed by plaintiffs, but the great weight of authority is to the contrary. * * * We know of no other court which has followed the rule announced in the Lewis case. [at 239]
Lewis v. Brautigam, however, has been followed since the 1959 rejection in Stift. The most conspicuous instance of recognition was by the Court of Appeals for the Ninth Circuit *26 in Robichaud v. Ronan, 351 F.2d 533 (1965). According to plaintiff's allegations, defendants, a county attorney and his deputy, filed a complaint against her (she being 16 years of age) in which she was accused of murder in the first degree; their motive was malicious and they had no probable cause; they tried "by trick and deceit" to cause plaintiff to say or do things which would incriminate her, and they attempted to intimidate plaintiff into confessing crimes which she had not committed.
A dismissal of the complaint by the court below was reversed. According to the opinion:
The prosecuting attorney may have numerous roles. * * * In the Lewis case, a state's attorney, an official prosecutor, was sued, not for acts done in the course of his quasi-judicial role but rather for acts done in his investigative role. * * * We agree with the reasoning of the Lewis case, and we must apply the principle here. * * * The title of office, quasi-judicial or even judicial, does not, of itself, immunize the officer from responsibility for unlawful acts which cannot be said to constitute an integral part of judicial process. [at 537]
In Robichaud the distinction between a prosecutor's conduct in quasi-judicial and investigative roles was stressed. This analysis has subsequently been refined so that in the opinion of at least one court "the doctrine of immunity to civil rights litigation has been devalued." Peterson v. Stanczak, 48 F.R.D. 426, 431 (N.D. Ill. 1969). In that case it was held that defendants (a state's attorney and his assistant) were not immune because, since they were charged with participation in a conspiracy to force a confession to murder, they were acting outside their judicial or quasi-judicial capacities and, instead, were behaving as policemen.
Viability of a distinction between prosecutorial acts in and outside of traditional procedures is questionable as long as the result in Yaselli v. Goff, 12 F.2d 396 (2 Cir.1926), continues to be approved by the United States Supreme Court. Defendant Goff, at the time a special assistant to the Attorney General of the United States, was, together with codefendants, charged with conspiring to accuse plaintiff and *27 others of a conspiracy to defraud the Government in a shipping matter with knowledge that the accusation was false. He allegedly caused false evidence to be presented to the grand jurors, "poisoned" their minds and secured an indictment. By answer, defendant pleaded immunity because in all the proceedings he acted "in the due performance of his duties as such special assistant." Plaintiff's reply alleged that defendant obtained the official appointment just for the purpose of the prosecution after a plan, including appointment of a receiver for plaintiff's company so as to get access to papers upon which to base the prosecution, and a request for defendant's appointment on representations involving false evidence, and that defendant and the others were maliciously motivated for a specified reason. It was further asserted that defendant had obtained his office "for the purpose of using such appointment as a shield and cloak to protect" himself in his machinations.
The trial court struck the reply, dismissed the complaint and taxed costs against plaintiff. The judgment was affirmed. The court held that defendant acted "in the performance of the duties imposed upon him by law," so that his immunity was "absolute." As for the "novel question" raised by the reply, it was held:
If he cannot be charged with acting willfully and maliciously after he gets appointed to the office, no more can he be charged with having conspired to get into the office in order to act willfully and maliciously after he gets his appointment. [at 406]
The United States Supreme Court affirmed per curiam "on the authority of Bradley v. Fisher." 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927).
It appears from all of the foregoing authorities that:
A prosecuting attorney is commonly granted a judicial type of immunity against civil suits. He is exempt from accountability to charges of malice, corruption or acts in "excess of * * * jurisdiction."
The shield has protected against specific accusations of having "instigated others to swear falsely" in a "trumped-up" prosecution *28 and of falsifying maliciously and corruptly to secure the prosecutional status.
The court should make new law only to the extent that a disposition of the case at hand compels it. In the present instance there is no need to innovate.
Firstly, the allegations of the amended complaint as they are grouped into transactions (2), (3) and (4) do not state actionable claims for relief.
In transaction (2) there is an insufficient claim because no allegation is made that when Natoli "falsely and maliciously implicated" DeGroot she did so on the initiative of any defendant, and there is no allegation that the pornographic film testimony had anything to do with him.
As for transaction (3) it is not alleged that the Kessler tactics were directed by the other defendants even though they "dispatched" him to Baltimore. Nor is it claimed that there was any resulting net prejudice in the form of deprivation of evidence from the witnesses.
What is claimed in transaction (4) is ineffectual because the only fact alleged to support the conclusion that defendants had "full knowledge" of Natoli's perjury is an alibi said to have been "corroborated" by witnesses and a "police log." This court must take judicial notice of the DeGroot trial transcript which shows that his whereabouts at the time was a credibility issue given to the jury as one on which reasonable men could differ.
Accordingly, defendants' motion to dismiss the amended complaint for failure to state a claim is granted as to paragraphs 2 (l) through (t).
This leaves for disposition alleged transactions (1) and (5) as they are derived from the eighth count of the amended complaint.
In (1) nothing less than subornation of prejury is claimed, and it must be held that the pleader has stated enough of a factual outline so that, with the benefit of reasonable inferences, the standard of R. 4:5-2 is satisfied. The asserted *29 fabrication attains an ultimate peak of wickedness in light of the prosecutor's demand for the death penalty. It is actually an understatement where plaintiffs say in their brief that "The allegations in the Complaint are serious and plaintiffs have full knowledge of their gravity." The allegations are not "serious," they are horrendous. Nothing like them has been presented in the decisional law offered by the parties or in what has come to light in the court's research.
In the frequently cited case of Watts v. Gerking, supra, the complaint alleged that the defendant district attorney consciously promoted a false charge because he "instigated others to swear falsely against the plaintiff, knowing that the charge itself was a false, fictitious and trumped-up one." However, plaintiff was thusly prosecuted for no more than a violation of the liquor law of Oregon. Two justices dissented from the decision. In his separate dissent one of them said:
To contend, under any proper conception of sound public policy, that any prosecuting officer has the privilege of bringing a person into court and charging him with and prosecuting him for a crime which he knows him to be innocent of, without being answerable for the damages caused thereby, upon the theory that the public good will be best subserved thereby, is a proposition too monstrous to be debated in a court of justice * * *. [228 P. at 144]
It is not necessary here to hold that a prosecutor in New Jersey has a defense to civil suits, as has been adjudicated elsewhere  nor is a measurement of its scope required. Instead, the court holds that if the full quantum of protection intended by the court in Bauers v. Heisel, supra, were available to defendants Thevos, Kessler, Carroll and Muccio, they should not be insulated from accountability to plaintiffs for what the latter claim happened in transaction (1) (Transaction (5) is ancillary, depending upon proof of (1) in order that the so-called "recantation" would have significance.) A reason for denying such immunity is presented in the quotation from Watts above. But citation of authority is unnecessary for the proposition that conduct such as is alleged in *30 transaction (1) is actionable in tort. No rationalization could possibly shield evil acts of such magnitude.
Defendants' motion to dismiss is therefore denied as to paragraphs 2(a) through (k) and as to (u) and (v) of the eighth count, as added by the amended complaint.
Since it is the enormity of plaintiffs' claim which deprives defendants of immunity, its substance should be tested quickly. Truth can no longer be assumed. Plaintiffs' right to make these allegations must soon be actively defended pursuant to the regular rules of court as this civil litigation follows the normal course of discovery where defendants can use devices available for forcing disclosure of evidence. Full revelation of the quality of plaintiffs' case will be complete, regardless of what defendants may or may not do in that respect, when the judge at the pretrial conference performs the function directed by R. 4:25. In particular, he must require plaintiffs to specify "the factual * * * contentions * * * as to the liability of * * * [each] defendant." R. 4:25-1(b) (3). The contentions can present only operative facts  conclusions, generalizations and self-serving declarations will not suffice:
Our practice embraces the thesis that parties should know their case before they try it. To that end, our rules permit full discovery, and the pretrial conference is designed to compel it. [Starr v. Berry, 25 N.J. 573, 585 (1958)]
It has been stressed that the success of a pretrial conference depends upon the presiding judge:
It is his duty to compel the litigants to reveal fully their legal and factual positions to the end that they will know precisely what is involved before the case comes to trial. [Mayfair Farms, etc. v. Kruvant Enterprises Co., 35 N.J. 558, 560 (1961)]
The case at bar is very different from the ordinary civil action. There is a separate judicial concern here where usually there is none. A full defense is available or unavailable to these defendants depending upon an adjudication *31 by the court. Although it has been determined that the defense is not appropriate in this instance, the public interest factors which justify exempting prosecutors from liability in tort, as they were catalogued in Bauers v. Heisel, supra, are still relevent:
We find the traditional arguments in support of immunity applicable here; they are "(1) the danger of influencing public officials by threat of a law suit; (2) the deterrent effect of potential liability on men who are considering entering public life; (3) the drain on the valuable time of the official caused by insubstantial suits * * *; (4) the unfairness of subjecting officials to liability for the acts of their subordinates; (5) the theory that the official owes a duty to the public and not to the individual; (6) the feeling that the ballot and the formal removal proceeding are more appropriate ways to enforce honesty and efficiency of public officers." Note, 66 Harv. L. Rev. 1285, 1295, n. 54 (1953). [361 F.2d at 590, n. 9]
These are the considerations which weigh heavily in favor of granting immunity against plaintiffs' civil suit. Outweighing the social benefit which these factors are meant to promote is the immensity of the supposed wrongdoing. The price for this subordination of one aspect of the public interest must be an immediate exploration of the content and merit of plaintiffs' claim.
The time for specifying the operative facts, "the factual * * * contentions * * * as to the liability of * * * [each] defendant," (R. 4:25-1(b) (3)) will be accelerated. On or before June 7, 1971, plaintiffs shall file directly with the court, and serve on each of movant defendants, under circumstances of confidentiality, an outline of the substance of the testimony of each witness and copies of all written evidence deemed to be probative of transaction (1). The court retains jurisdiction as to this branch of the controversy.
In the second count of the complaint as amended it is alleged that Thevos, Kessler and Carroll committed legal malpractice against DeGroot because they did not provide him with "all evidence which they had in their possession which might exculpate him" from the murder charge, in violation *32 of a duty imposed by the New Jersey "Rules of Ethics" and United States Supreme Court decisions.
Plaintiffs' brief contains the following:
The plaintiffs must admit to the Court that they have been unable to find a case in which a suit for malpractice was tried in the Courts without the benefit of a normal attorney-client relationship Regardless of this, the plaintiffs submit that the damages claimed by the plaintiffs as the result of the defendant-attorney's breach of duty should not go without reparation and that justice is better served by holding that an attorney is liable for his legal malpractice not only to his clients but to all others who can demonstrate damage proximately caused by the breach.
The court will not disturb settled concepts by enlarging the duty of a lawyer so as to create what plaintiffs admit to be "a hybrid in the field of legal malpractice." Establishing such a precedent would carry a trial court over the boundary set by Canon 20 of the Canons of Judicial Ethics. The second count of the original complaint is therefore dismissed.
A conspiracy "to falsely imprison the plaintiff, John C. DeGroot, by the suppression of evidence and by the creation of false evidence" is alleged in the fourth count of the complaint as amended. The only part of this charge which is left in the case are the contentions comprehended in transaction (1) above  the gist of which fits the assertion that there was "the creation of false evidence."
It has been ruled in this decision that the amended complaint presents triable issues of fact in such an area. The outcome will depend upon whether plaintiffs can prove by a preponderance of evidence that defendants acted in the manner described. Formulation of the fourth count does not include any additional elements of fact but simply puts the label of "conspiracy" on conduct already outlined. This does not spell out a separate cause of action and for this reason the fourth count is dismissed.
A conformable order should be submitted.