NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1042-15T4

MICHAEL J. MANDELBAUM,

 Plaintiff-Appellant,

v.

JACK ARSENEAULT,

 Defendant-Respondent.
________________________________

 Argued December 20, 2016 – Decided September 28, 2017

 Before Judges Ostrer and Leone.

 On appeal from Superior Court of New Jersey,
 Law Division, Somerset County, Docket No. L-
 0927-15.

 Joel M. Silverstein argued the cause for
 appellant (Stern & Kilcullen, LLC, attorneys;
 Mr. Silverstein and Michael Dinger, on the
 briefs).

 Nace Naumoski argued the cause for respondent
 (Stewart Bernstiel Rebar & Smith, attorneys;
 Cathleen Kelly Rebar, of counsel; Mr.
 Naumoski, on the brief).

PER CURIAM

 This case arises out of the divorce of plaintiff Michael J.

Mandelbaum and Debra A. Mandelbaum. One of Debra's lawyers,
defendant Jack Arseneault, sent filings in the divorce litigation

to The Wall Street Journal (WSJ), resulting in their widespread

publication. Michael sued Arseneault for abuse of process (count

one), libel (count two), invasion of privacy — false light (count

three), invasion of privacy — public disclosure of private facts

(count four), and civil conspiracy (count five). Michael appeals

an October 30, 2015 order granting Arseneault's motion to dismiss

Michael's complaint without prejudice for failure to state a claim,

and granting his motion to strike paragraphs 4-12, 29, 41, and 52

of the complaint. We affirm the dismissal without prejudice of

count one, reverse the dismissal of counts two through five, and

reverse the striking of the paragraphs.

 I.

 "Because this appeal comes to us on a Rule 4:6-2(e) motion

to dismiss, we accept as true all factual assertions in the

complaint." Smith v. SBC Communs., Inc., 178 N.J. 265, 268-69

(2004). Thus, the following facts are drawn from Michael's

complaint.

 The complaint's paragraphs 4-12 alleged as follows. Debra

secretly decided to divorce Michael to claim as much of Michael's

family's money as possible. In preparation, she attempted to

obtain and hide assets; opened secret personal safe deposit boxes;

tried to taunt him to hit her by hitting him in the groin and by

 2 A-1042-15T4
initiating verbal altercations; and falsely told others he abused

her. On December 17, 2013, Debra removed expensive jewelry from

their house and hid it in her personal safe deposit box. The next

day, Michael discovered she removed the jewelry and insisted they

go to the bank the morning of December 19 to retrieve it. They

argued. Later, Debra researched post-concussion syndrome, and

arranged for their older son to take their youngest child to school

so she and Michael would be alone in the house before the bank

opened on December 19.

 On the morning of December 19, Michael and Debra argued. When

Michael tried to walk away, Debra hit, grabbed and blocked him,

and confronted him in the hallway. "There, Debra stepped away

from Michael, gave him a strange look as she continued backwards

toward the staircase landing, and slid down the stairs feet-first

on her stomach, mocking him with facial gestures as she began her

slide down the stairs."

 Michael immediately attended to Debra, called a doctor, and

later called 911. After the police arrived, Debra lied to police

that Michael had "grabbed her and pushed her, causing her to lose

her balance and fall down the stairs." Michael was arrested.

 When Debra was taken to the hospital, she lied to a police

officer that Michael abused her for years. She also lied that he

"advanced toward her in a threatening manner and grabbed her upper

 3 A-1042-15T4
arms," that she fell down the stairs "as she began to back away

from Michael, in an attempt to free herself," and that while he

"didn't specifically push her down the stairs[,] she would not

have fallen if she wasn't afraid of what he was going to do as he

grabbed her arms and threatened to kill her."

 While at the hospital, Debra telephonically completed a

domestic violence complaint upon which a municipal court judge

relied in issuing a temporary restraining order (TRO). She lied

to the judge that Michael "was pushing and shoving and screaming,"

that she stepped back from his aggressiveness, "lost [her] balance

and fell down the stairs." She stated that Michael "did not

physically have his hands on my body and push me but he kept . . .

grabbing me and pushing me and, . . . taking threatening steps,"

"grabbing me on my arms," face, and shoulders and "stepp[ing]

towards me with his hands outstretched."

 By December 25, Debra contradicted those false allegations.

She admitted to her sister-in-law that "Michael did not push her

or lay a hand on her," and that she fell down the stairs because

she "slipped or lost her balance." Debra told a contractor that

"Michael did not lay a hand on me." Debra told another sister-

in-law that Michael did not push her down the stairs. Nonetheless,

on January 6, 2014, the Prosecutor's Office filed a criminal

 4 A-1042-15T4
complaint-arrest warrant charging Michael with aggravated assault,

N.J.S.A. 2C:12-1(b)(7).

 Since December 21, 2013, Arseneault served as Debra's co-

counsel in the divorce case and represented Debra in the criminal

case. By January 9, 2014, he knew Michael's arrest, the TRO, and

the criminal complaint-arrest warrant (collectively the "Process")

were based on Debra's accusations "she had fallen down the stairs

as a result of Michael pushing, shoving, and grabbing her, and

that those accusations were false." In a January 9 email to

Michael's counsel, Arseneault acknowledged Debra's admission "that

her husband did not push her down the stairs."

 Nonetheless, Arseneault conspired with Debra to exploit her

false allegations and abuse the Process as leverage to extort a

settlement from Michael and his family that was larger than she

legally deserved in the divorce case. The complaint's paragraph

29 alleged Arseneault's compensation included a percentage of any

settlement Debra received in the divorce case.

 Arseneault also used Debra's false allegations and the

resulting Process to coerce Michael into signing a January 23,

2014 consent order in which Debra agreed to dismiss the TRO and

Michael agreed to pay her $25,000 per month plus household and

transportation expenses and $140,000 in legal and other costs.

 5 A-1042-15T4
 When Michael moved to dismiss the divorce complaint,

Arseneault included in the June 12, 2014 opposition papers a

certification by Debra, in which she resurrected her false and

abandoned allegation that Michael pushed, shoved, and grabbed her,

causing her to fall down the stairs. Arseneault also included

exhibits, including the police officer's probable-cause affidavit

repeating that allegation and describing Michael's arrest, and a

joint tax return of Debra and Michael in which Michael's social

security number was unredacted.

 The complaint's paragraph 41 alleged that in an August 6,

2014 letter, Arseneault threatened a "public undressing" of

Michael and his family if he did not accede to Debra's monetary

demands.

 In September 2014, Arseneault followed through on that threat

by contacting the WSJ and providing it with certain filings in the

divorce case, including Debra's certification and the exhibits

stating Michael had "grabbed and pushed her, causing her to lose

her balance and fall." Although Arseneault knew Debra's accusation

was false, he decided not to advise the WSJ's reporter.1

1
 The parties have supplied us with Debra's certification and over
200 pages of exhibits Arseneault admittedly supplied to the WSJ,
but have not supplied us with the WSJ's resulting article.

 6 A-1042-15T4
 As a result, the WSJ published an online article which quoted

Debra's false accusation and provided electronic links to Debra's

certification and the exhibits. The article stated that Michael,

son of a part owner of the Minnesota Vikings, had been charged

with aggravated assault and that Debra had obtained a TRO.

 The WSJ story was picked up by numerous other publications,

including Sports Illustrated, the New York Post, The Star-Ledger,

and online sites, each of which reported that Michael pushed Debra

down the stairs. That resulted in a "firestorm of negative

publicity" for Michael and his family, death threats to Michael,

and harassing phone calls to his father.

 The complaint's paragraph 52 alleged that in early 2014,

Michael asserted that Debra failed to pay certain expenses that

were her responsibility under the consent order. Michael proposed

that he reduce his next $25,000 monthly payment accordingly.

 In a December 14, 2014 letter, Debra's other divorce counsel

responded by threatening that if Michael "withholds so much as one

dollar from [Debra's] monthly support payments," he would be

"publicly disgraced once again." The other counsel was "instructed

to so respond by Arseneault and/or his co-conspirator, Debra."

 Michael filed a complaint against Arseneault in the Law

Division. Arseneault successfully moved to dismiss the complaint

 7 A-1042-15T4
under Rule 4:6-2(e), and to strike the above-mentioned paragraphs

of the complaint under Rule 4:6-4(b). Michael appeals.

 II.

 We first review the motion court's grant of Arseneault's

motion to strike. Rule 4:6-4(b) permits a court to dismiss a

pleading that is "scandalous, impertinent, or . . . abusive," or

to strike any part of a pleading "that is immaterial or redundant."

The rule is similar to Fed. R. Civ. P. 12(f), which permits federal

courts to strike "any redundant, immaterial, impertinent, or

scandalous matter." Under that rule, the federal courts review

orders on motions to strike "for an abuse of discretion." See,

e.g., Operating Eng'rs Local 324 Health Care Plan v. G&W Constr.

Co., 783 F.3d 1045, 1050 (6th Cir. 2015); United States v. Coney,

689 F.3d 365, 379 (5th Cir. 2012). We will hew to the same

standard of review.

 The motion court ruled the complaint's paragraphs 4-12, 29,

41, and 52 were "not relevant to the underlying claims. Moreover,

the court does not recognize events prior to defendant's

involvement in the matter, or Defendant's alleged motive as

sufficiently related to those claims being asserted here." To the

contrary, as set forth above, those paragraphs were relevant

because the facts alleged were "of consequence to the determination

of the action." See N.J.R.E. 401.

 8 A-1042-15T4
 Paragraphs 4-12 alleged how and why Arseneault's co-

conspirator Debra prepared to stage her fall down the stairs. The

complaint claims Arseneault intentionally misrepresented why Debra

fell, making relevant Debra's "motive, opportunity, intent,

preparation[ and] plan." See N.J.R.E. 404(b); see also State v.

Louf, 64 N.J. 172, 177 (1973) ("the acts and declarations of any

of the conspirators in furtherance of the common design may be

given in evidence against any other conspirator").

 Paragraph 29 alleged Arseneault had a financial motive to

take these actions to maximize Debra's settlement. Motive is

relevant. See State v. Calleia, 206 N.J. 274, 293 (2011). Indeed,

"the court must look to the motivation of the attorney" to resolve

an abuse of process claim. LoBiondo v. Schwartz, 199 N.J. 62, 109

(2009).

 Paragraph 41 alleged Arseneault's letter threatened a "public

undressing" of Michael and his family shortly before Arseneault

sent the certification and exhibits to the WSJ.2 Finally,

paragraph 52 alleged Michael's proposal that triggered a threat

2
 Arseneault contends paragraph 41 misread his letter, which stated
Debra had made "a good-faith effort to avoid a 'public undressing'
of the family's assets." However, Arseneault's letter concluded
that Michael's position "leaves her with no alternative but to"
"air the family finances." Drawing all reasonable inferences in
Michael's favor, the letter may be read as a threat of a "public
undressing."

 9 A-1042-15T4
he would be "publicly disgraced once again," allegedly at the

behest of conspirators Arseneault and Debra. The facts concerning

these threats are relevant.

 As these paragraphs are relevant, "[t]here is no

justification for striking" them. DeGroot v. Muccio, 115 N.J.

Super. 15, 19 (Law Div. 1971). Arseneault claims it was scandalous

to allege he entered into a contingency fee in a family matter in

violation of R.P.C. 1.5(d). However, "[n]o matter how the language

may vilify defendants, it will not be 'scandalous' within the

meaning of the cited rule unless it is irrelevant." DeGroot,

supra, 115 N.J. Super. at 19 (citing Chew v. Eagan, 87 N.J. Eq.

80, 81-82 (Ch. 1916)); see also Coney, supra, 689 F.3d at 380

(holding the "pleadings are not scandalous because they are

directly relevant").

 Accordingly, the motion court abused its discretion in

striking those paragraphs. Thus, we consider those paragraphs in

reviewing whether the complaint states a claim.

 III.

 We next address the motion court's dismissal of the complaint

without prejudice for "failure to state a claim upon which relief

can be granted." R. 4:6-2(e). Our Supreme Court has instructed

trial courts "to approach with great caution applications for

dismissal under Rule 4:6-2(e)," which "should be granted in only

 10 A-1042-15T4
the rarest of instances." Printing Mart-Morristown v. Sharp Elecs.

Corp., 116 N.J. 739, 772 (1989).

 "The standard traditionally utilized by courts to determine

whether to dismiss a pleading for failure to state a claim on

which relief may be granted is a generous one" for plaintiffs.

Green v. Morgan Props., 215 N.J. 431, 451 (2013). The standard

is "whether a cause of action is 'suggested' by the facts" alleged

in the complaint. Printing Mart-Morristown, supra, 116 N.J. at

746 (citation omitted). "[A] reviewing court 'searches the

complaint in depth and with liberality to ascertain whether the

fundament of a cause of action may be gleaned even from an obscure

statement of claim, opportunity being given to amend if

necessary.'" Ibid. (citation omitted). Our examination of the

complaint should be one "that is at once painstaking and undertaken

with a generous and hospitable approach." Ibid.

 "We review a grant of a motion to dismiss a complaint for

failure to state a cause of action de novo, applying the same

standard under Rule 4:6-2(e) that governed the motion court."

Wreden v. Township of Lafayette, 436 N.J. Super. 117, 124 (App.

Div. 2014). We address each count of the complaint in turn.

 A.

 Count one charges Arseneault with abuse of process, namely

Michael's arrest, the criminal complaint-arrest warrant, and the

 11 A-1042-15T4
TRO. We affirm the dismissal of this count on the ground that

Arseneault did not use or threaten the use of process in a coercive

manner as required by our precedent.

 We have defined "process" as the "procedural methods used by

a court to 'acquire or exercise its jurisdiction over a person or

over specific property,'" including "the 'summons, mandate, or

writ used by a court to compel the appearance of the defendant in

a legal action or compliance with its orders,'" as well as the

"'arrest of the person and criminal prosecution.'" Ruberton v.

Gabage, 280 N.J. Super. 125, 131 (App. Div.) (citations omitted),

certif. denied, 142 N.J. 451 (1995); see Wozniak v. Pennella, 373

N.J. Super. 445, 461 (App. Div. 2004).

 "The tort of malicious abuse of process lies not for

commencing an improper action, but for misusing or misapplying

process after it is issued." Hoffman v. Asseenontv.Com, Inc., 404

N.J. Super. 415, 431 (App. Div. 2009); see Earl v. Winne, 14 N.J.

119, 128-29 (1953). "The tort is defined in Ash v. Cohn, 119

N.J.L. 54, 58 (E. & A. 1937)." Tedards v. Auty, 232 N.J. Super.

541, 549 (App. Div. 1989). A plaintiff claiming malicious abuse

of process must allege "(1) that defendants made an improper,

illegal and perverted use of the process, i.e., a use neither

warranted nor authorized by the process, and (2) that in use of

 12 A-1042-15T4
such a process there existed an ulterior motive." Ash, supra, 119

N.J.L. at 58.

 As the motion court stated, Michael alleged three instances

of malicious abuse of process. First, Michael alleged "Debra and

Arseneault successfully used the Process – especially the Domestic

Violence TRO and the thinly veiled threat that Debra would again

reverse course [and] cooperate with the prosecutor . . . as

leverage to cause Michael to enter into the Consent Order."

Specifically, Michael cited Debra's earlier statements, to Michael

and their children that she was not cooperating with the

prosecution "at this time." Michael alleged Debra made those

statements on Arseneault's advice. Even if Debra's statements are

attributed to Arseneault, they were not abuse of process.

 As the motion court recognized, "[i]n order for there to be

'abuse' of process, . . . a party must 'use' process in some

fashion, and that use must be 'coercive' or 'illegitimate.'"

Hoffman, supra, 404 N.J. Super. at 431 (quoting Ruberton, supra,

280 N.J. Super. at 130-31). "There must be such use of it as in

itself is without the scope of the process and hence improper."

Gambocz v. Apel, 102 N.J. Super. 123, 130 (App. Div.)(quoting Earl

v. Winne, 34 N.J. Super. 605, 614-16 (Law Div. 1955)), certif.

denied, 52 N.J. 485 (1968). "If the process is not used at all

no action can lie for its abuse." Ruberton, supra, 280 N.J. Super.

 13 A-1042-15T4
at 131 (quoting Earl, supra, 34 N.J. Super. at 615). "Some

definite act or threat not authorized by the process, or aimed at

an objective not legitimate in the use of the process, is required;

and there is no liability where the defendant has done nothing

more than carry out the process to its authorized conclusion, even

though with bad intentions." Gambocz, supra, 102 N.J. Super. at

128 (quoting Prosser, Law of Torts, § 115, pp. 876-77 (3d ed.

1964)).

 Debra's statements did not mention, use, or threaten to use

the arrest or the criminal complaint-arrest warrant. Even if her

statement could be regarded as a threat to "carry out the

[criminal] process to its authorized conclusion," it was not abuse

of process. Ibid.

 Second, Michael alleged that Arseneault "again leverag[ed]

the Process in a further attempt to extort from Michael and his

family [an] outlandish settlement" when Arseneault sent the WSJ

filings in the divorce case, in particular Debra's certification

and the exhibits, including the TRO, the criminal complaint-arrest

warrant, and the probable-cause affidavit describing Michael's

arrest. However, publicizing process is not abuse of process.

 The New Jersey cases which have found abuse of process have

involved active use of the process "to 'acquire or exercise its

jurisdiction over a person or over specific property.'" Ruberton,

 14 A-1042-15T4
supra, 280 N.J. Super. at 131; see, e.g., Ash, supra, 119 N.J.L.

at 55-56, 59 (finding creditors arranged for writs of execution

to be returned unsatisfied to set up a debtor's arrest and coerce

payment of a debt); Wozniak, supra, 373 N.J. Super. at 461-62

(finding a landlord filed a criminal complaint, leading to a

tenant's booking under threat of arrest, to get the tenants to

dismiss a civil complaint); Tedards, supra, 232 N.J. Super. at

543-44, 548-49 (finding wife's attorney misused a writ of ne exeat

by threatening to arrest the husband to coerce payment of a debt);

see also Restatement (Second) of Torts, § 682 cmt. a, illus. 1-3

(1977). "There must be an unlawful interference with the person

or property under color of process." Earl, supra, 34 N.J. Super.

at 615. No New Jersey case has found publicizing process is abuse

of process.

 Michael cites a trial court decision from New York holding:

 Threats to give wide publicity to the contents
 of a complaint, in order to coerce and extort
 payments from the defendant in the action,
 motivated by a desire to escape adverse
 publicity, and the consummation of such
 threats do not constitute a legitimate and
 proper use of the process of the court.

 [Cardy v. Maxwell, 169 N.Y.S.2d 547, 550 (Sup.
 Ct. 1957).]

 However, New York's highest court later held a similar claim

— that a lawsuit "was totally without basis in fact and was begun

 15 A-1042-15T4
solely for the purpose of ruining his business reputation by

widespread publication of the complaint" — did "not state a cause

of action for abuse of process." Williams v. Williams, 246 N.E.2d

333, 335 (N.Y. 1969). The high court ruled "there must be an

unlawful interference with one's person or property under color

of process in order that action for abuse of process may lie."

Ibid. As "it is unclear what strength Cardy v. Maxwell carries"

in New York, we decline to follow it. Chrysler Corp. v. Fedders

Corp., 540 F. Supp. 706, 729 (S.D.N.Y. 1982) (declining to follow

Cardy); see Holiday Magic, Inc. v. Scott, 282 N.E.2d 452, 457

(Ill. App. Ct. 1972) (same; "Cardy is actually a legal anomaly").

 Third, Michael alleged Arseneault "and/or" Debra instructed

her other divorce counsel to threaten Michael that he would be

"publicly disgraced once again," with the intent "to abuse and

leverage the Process to (a) coerce Michael to refrain from

enforcing his rights under the terms of the Consent Order, and (b)

thereby continue exacting [excessive] payments from Michael."

Again, this alleged threat did not mention any Process, instead

threatening publicity. That was inadequate to allege abuse of

process, even if it was done to prompt a civil settlement. See

Ruberton, supra, 280 N.J. Super. at 130-31.

 Michael notes that, in some circumstances, "it is what is

done in the course of negotiation, rather than the issuance or any

 16 A-1042-15T4
formal use of the process itself, which constitutes the tort."

Gambocz, supra, 102 N.J. Super. at 128 (quoting Prosser, supra).

We agree "maliciously threatening [misuse of] process in an

existing case could be as unfairly coercive as abusing process in

some more direct way." Hoffman, supra, 404 N.J. Super. at 432.

However, "[s]ome definite act or threat not authorized by the

process, or aimed at an objective not legitimate in the use of the

process, is required." Gambocz, supra, 102 N.J. Super. at 128

(quoting Prosser, supra). Here, the other counsel's letter, like

Arseneault's previous "public undressing" letter, made no definite

threat the Process would be actively misused. See Baglini v.

Lauletta, 338 N.J. Super. 282, 296-97 (App. Div. 2001).

 Thus, we affirm the motion court's dismissal of count one for

failure to state a claim for malicious abuse of process against

Arseneault. However, we do not agree with the court's assertions

that "the claim exists almost entirely against Debra," that

Arseneault's alleged actions were "proper," "consistent with his

responsibilities as Debra's attorney," and "taken in the normal

course of his duties," or that he "acted appropriately in

representing his client." The complaint alleged Arseneault acted,

knowing the Process was based on false statements, for the ulterior

motive of extorting money from Michael and his family. Although

the complaint did not adequately allege the actions were an abuse

 17 A-1042-15T4
of process, they "may have been otherwise tortious or violated

ethical standards." Ruberton, supra, 280 N.J. Super. at 132.

 B.

 Count two charges Arseneault with libel by providing the WSJ

with the false statements in Debra's certification and the exhibits

that "(1) Michael had pushed, shoved, and grabbed her, causing her

to fall down the stairs and (2) Michael had thereby committed a

'felony,' 'an aggravated assault,' or other crime."

 "'[L]ibel is defamation by written or printed words.'" W.J.A.

v. D.A., 210 N.J. 229, 238 (2012) (citation omitted). "[T]he

elements of the cause of action for defamation [are] '(1) the

assertion of a false and defamatory statement concerning another;

(2) the unprivileged publication of that statement to a third

party; and (3) fault amounting at least to negligence by the

publisher.'" Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 585

(2009) (citation omitted).

 The motion court dismissed Michael's libel claim because of

his "inability to demonstrate fault." However, on a motion to

dismiss under Rule 4:6-2(e), "the [c]ourt is not concerned with

the ability of plaintiffs to prove the allegation contained in the

complaint[.]" Green, supra, 215 N.J. at 452. Michael's complaint

adequately alleged that "Arseneault made and published each of

these written accusations and statements against Michael with

 18 A-1042-15T4
actual knowledge that they were false, with reckless disregard of

their falsity, or with negligence in failing to ascertain the

falsity of the statement before communicating it."

 The motion court found Arseneault "had no reason not to

believe the sworn affidavit of a Police Officer, or numerous other

sworn certifications that formed the basis of his belief."

However, the complaint did not concede Arseneault believed Debra's

statements were true.

 To the contrary, the complaint alleged "Arseneault was aware

that Debra's accusations against Michael set forth in . . . Debra's

Certification were false." The complaint further alleged

"Arseneault knew that Michael's arrest and the issuance of the

criminal complaint-arrest warrant and of the Domestic Violence TRO

were based on Debra's accusations that she had fallen down the

stairs as a result of Michael pushing, shoving, and grabbing her,

and that those allegations were false." The complaint alleged

Arseneault was aware Debra repeatedly made admissions

contradicting her accusations, but sent her contrary accusations

to the WSJ without advising the WSJ of her admissions.

 The motion court erred in finding facts contrary to the

complaint's allegations. On a motion for failure to state a claim,

the "inquiry is limited to examining the legal sufficiency of the

facts alleged on the face of the complaint." Printing Mart-

 19 A-1042-15T4
Morristown, supra, 116 N.J. at 746. The court was required to

"'accept as true the facts alleged in the complaint.'" Maeker v.

Ross, 219 N.J. 565, 569 (2014) (citation omitted).

 The motion court further found Arseneault's supposed

"reliance on sworn affidavits was reasonable." The court noted

the "New Jersey Disciplinary Rules of Conduct permit a lawyer who

is participating in the litigation of a matter to state information

contained in a public record unless the lawyer knows, or reasonably

should know his statement will likely materially prejudice the

proceeding," citing R.P.C. 3.6(a), (b)(2). However, the complaint

alleged Arseneault knew the information in Debra's certifications

and the exhibits was false.

 Nothing in the Rules of Professional Conduct states that it

is ethical for a lawyer to publicize as true statements the lawyer

knows to be false.3 Indeed, the ethical rules "include reasonable

restrictions upon [attorneys'] extrajudicial speech to discourage

and prevent extraneous matters from being insinuated" which "could

3
 Under the Rules, lawyers may not knowingly "offer evidence that
the lawyer knows to be false," R.P.C. 3.3(a)(4), or "counsel or
assist a witness to testify falsely," R.P.C. 3.4(b). Moreover,
lawyers may not knowingly "(1) make a false statement of material
fact or law to a third person; or (2) fail to disclose a material
fact to a third person when disclosure is necessary to avoid
assisting a criminal or fraudulent act by a client." R.P.C.
4.1(a).

 20 A-1042-15T4
divert the search for truth." In re Hinds, 90 N.J. 604, 625 (1982)

(discussing R.P.C. 3.6's predecessor, D.R. 7-107).

 In any event, R.P.C. 3.6 is no defense to tortious conduct.

Nor was Michael required "to make out a violation of the New Jersey

Disciplinary Rules of Professional Conduct," as the motion court

stated. Like the ABA model rules, New Jersey's ethical "[r]ules

are designed to provide guidance to lawyers and to provide a

structure for regulating conduct through disciplinary agencies.

They are not designed to be a basis for civil liability." Baxt

v. Liloia, 155 N.J. 190, 197 (1998) (quoting Model Rules of

Professional Conduct, Scope (Am. Bar Ass'n 1992)). Similarly,

"state disciplinary codes are not designed to establish standards

for civil liability." Id. at 202.

 Arseneault argues Debra's statements in the documents he

submitted with his motion to dismiss establish her accusations

were true. "In evaluating motions to dismiss, courts consider

'allegations in the complaint, exhibits attached to the complaint,

matters of public record, and documents that form the basis of a

claim.'" Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005)

(citation omitted). Arseneault cites Debra's certification, the

officer's probable cause affidavit, and the TRO transcript, which

were all referenced in the complaint as bases for Michael's claim.

"[A] court may consider documents specifically referenced in the

 21 A-1042-15T4
complaint 'without converting the motion into one for summary

judgment.'" Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458,

482 (App. Div. 2015) (citation omitted), appeal dismissed, 224

N.J. 523 (2016).

 However, the complaint alleged Debra's statements in those

documents were false. In the TRO transcript, Debra claimed Michael

"was pushing and shoving," "grabbing me and pushing me," and

physically "grabbing me on my arms," face, and shoulders, causing

her to lose her balance and fall. The probable-cause affidavit

related Debra's statements that Michael "grabbed and pushed her,

causing her to lose her balance and fall down the stairs." Debra's

certification said Michael "physically pushed and shoved me,"

"continued to grab my arms and shake and shove me, causing me to

lose my balance" and fall.

 Arseneault argues Debra's statements in the documents were

consistent with her later "admissions" that Michael did not push

her or lay a hand on her. To the contrary, a fact finder could

find Debra's accusations in the documents were inconsistent with

her later admissions, and were thus "'false and defamatory.'"

Leang, supra, 198 N.J. at 585 (citation omitted). On a motion

under Rule 4:6-2(e), Michael is "entitled to every reasonable

inference of fact." Printing Mart-Morristown, supra, 116 N.J. at

746.

 22 A-1042-15T4
 We reject the motion court's reasoning for dismissing the

libel claim raised in count two, and reverse. The court also

dismissed counts three and four primarily based on the same

reasoning. We similarly reject that reasoning as to counts three

and four, and now consider the court's secondary reasons for

dismissing those counts.

 C.

 In count three, Michael claimed Arseneault invaded his

privacy by portraying him in a false light when he provided to the

WSJ documents containing Debra's accusations that he had

"physically abused his wife, causing her to fall down a flight of

stairs, and was, therefore, guilty of domestic violence and a

crime."

 A defendant commits false-light invasion of privacy when he

 gives publicity to a matter concerning another
 that places the other before the public in a
 false light [if]

 . . . .

 (a) the false light in which the other
 was placed would be highly offensive to
 a reasonable person, and

 (b) the actor had knowledge of or acted
 in reckless disregard as to the falsity
 of the publicized matter and the false
 light in which the other would be placed.

 [Romaine v. Kallinger, 109 N.J. 282, 294
 (1988) (quoting Restatement, supra, § 652E);

 23 A-1042-15T4
 accord Durando v. Nutley Sun & N. Jersey Media
 Grp., Inc., 209 N.J. 235, 249 (2012).]

 The motion court's secondary reason for dismissing count

three was that "the publicity element of the false light claim is

absent when the matter was previously publicized." However, no

New Jersey case makes prior publication a defense to publicizing

a matter portraying someone in a false light. Neither the court

nor Arseneault cited any authority for such a defense.

 The Restatement, supra, contains no prior-publication defense

for publicity portraying a person in a false light. It simply

provides that publicity "means that the matter is made public, by

communicating it to the public at large, or to so many persons

that the matter must be regarded as substantially certain to become

one of public knowledge." Id. § 652D comment a; see id. § 652E

comment a. "[A]ny publication in a newspaper or a magazine, even

of small circulation, or in a handbill distributed to a large

number of persons, or any broadcast over the radio, or statement

made in an address to a large audience, is sufficient to give

publicity within the meaning of the term as it is used in" those

sections. Restatement, supra, § 652D cmt. a.

 We need not decide whether there is a prior-publication

defense to false-light invasion of privacy. Even if prior

publication could be a defense, there was no basis in the complaint

 24 A-1042-15T4
for the motion court's "finding that the facts were previously

published." Thus, it could not be a proper basis for dismissal

under Rule 4:6-2(e). See Printing Mart-Morristown, supra, 116

N.J. at 746.

 The motion court referenced an article in The Star-Ledger.

This apparently referred to a January 7, 2014 article in The Star-

Ledger, which Arseneault attached to his motion to dismiss

Michael's complaint. However, the article was not referenced in

the complaint, was not a basis of Michael's claims, and was not a

"public record." Cf. Banco Popular, supra, 184 N.J. at 183.

Arseneault argues the article became a public record because it

was attached to a brief Debra submitted in the divorce case.

However, "[b]riefs are not filed in the technical sense," "do not

become part of the docketed case file," and are "not an acceptable

vehicle for the presentation of facts or documents not of record."

Pressler & Verniero, Current N.J. Court Rules, comment on R. 1:6-

5 (2017).

 "If, on a motion to dismiss based on [Rule 4:6-2(e)], matters

outside the pleading are presented to and not excluded by the

court, the motion shall be treated as one for summary judgment and

disposed of as provided by R. 4:46[.]" R. 4:6-2. Summary judgment

was inappropriate here.

 25 A-1042-15T4
 Even if prior publication could be a defense to portraying a

person in a false light, the prior publication was in a Newark

newspaper, and essentially repeated only the allegations in the

probable-cause affidavit. By contrast, the complaint alleged

Arseneault sent the WSJ not only the probable-cause affidavit but

also Debra's certification and the exhibits, including the

criminal complaint-arrest warrant and the TRO. The complaint

further alleged that, based on Arseneault's disclosure, the WSJ

published an online article which was "picked up by numerous other

publications, including, without limitation, Philly.com, the Star

Ledger, the New York Post, Sports Illustrated, Vikings Territory,

and Mail Online," and that they all published additional details.

 The motion court took the position that "[i]n no way does the

[relative] size [of the circulation] of The Star-Ledger prohibit

the court from finding that the facts were previously published."

The court also asserted "that the news was published by a 'local

New Jersey newspaper' is of no consequence," and that the WSJ

"published facts not in The Star-Ledger article has no effect."

 We disagree. Even if prior publication could be a defense,

knowingly or recklessly causing publicity reaching many additional

people placing someone in a false light could result in additional

damages and give rise to a cause of action against the person

causing the additional publicity. Otherwise, a person could take

 26 A-1042-15T4
false matter someone had "posted in the window of [a] shop," and

knowingly and recklessly give the false matter widespread

publicity to many millions in newspapers, magazines, or websites

of national or global circulation, without liability. See

Restatement, supra, § 652D cmt. a, illus. 2. Moreover, the

relative circulations of The Star-Ledger, the WSJ, Sports

Illustrated, the New York Post, and the other websites mentioned

in the complaint are not before us. That itself is sufficient to

prevent summary judgment.4

 Summary judgment may be granted only if "there is no genuine

issue as to any material fact challenged." R. 4:46-2(c). Because

of this "inadequate record, we are unable to conclude that there

is no genuine issue as to any material fact." Lyons v. Township

of Wayne, 185 N.J. 426, 437 (2005). Moreover, "when viewed in the

light most favorable to the non-moving party," the evidence was

not "'so one-sided that [Arseneault] must prevail as a matter of

law.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523,

4
 Thus, we need not resolve whether the additional facts disclosed
by Arseneault to the WSJ and subsequently publicized were
themselves sufficient to cause additional damages and give rise
to a cause of action. However, we note that "a fundamental
requirement of the false light tort is that the disputed publicity
be in fact false, or else 'at least have the capacity to give rise
to a false public impression as to the plaintiff.'" Romaine,
supra, 109 N.J. at 294 (citation omitted).

 27 A-1042-15T4
533 (1995) (citation omitted). Thus, the court erred in dismissing

count three.

 D.

 In count four, Michael claimed Arseneault invaded his privacy

by public disclosure of a private fact as follows: "At least some

of the facts Arseneault disclosed to the Wall Street Journal,

including, without limitation, Michael's Social Security Number,

were actually private." Michael was "forced to take protective

measures because of the possible attempt of an imposter to use his

social security number to open credit cards in his name." As a

"result of Arseneault's disclosure of such private facts, Michael

has suffered and will continue to suffer substantial pecuniary and

other harm and damages."

 The complaint adequately set forth a cause of action for

invasion of privacy by publicizing a private fact.

 One who gives publicity to a matter concerning
 the private life of another is subject to
 liability to the other for invasion of [the
 other's] privacy, if the matter publicized is
 of a kind that (a) would be highly offensive
 to a reasonable person, and (b) is not of
 legitimate concern to the public.

 [Castro v. NYT Television, 384 N.J. Super.
 601, 610-11 (App. Div. 2006) (quoting
 Restatement, supra, § 652D); see G.D. v.
 Kenny, 205 N.J. 275, 309 (2011).]

 28 A-1042-15T4
 The motion court's secondary reason for dismissing the

private-fact count was that Michael "did not set forth facts in

support of that claim, and any potential damages would be pure

speculation." However, Michael's allegation that he had to take

protective measures and suffered pecuniary damages was sufficient

under the lenient standard of Rule 4:6-2(e). See Printing Mart-

Morristown, supra, 116 N.J. at 760 (finding an allegation

"plaintiffs lost any gain from" a job sufficiently alleged

damages). The issue of damages "should await the development of

a record," and thus "we will not permit the complaint to be

stricken at this juncture." Id. at 770.

 Arseneault argues there can be no liability because the joint

tax return bearing Michael's unredacted social security number was

an exhibit to the certification Debra filed in the divorce action.

Generally, "there is no liability for giving publicity to facts

about the plaintiff's life that are matters of public record, such

as . . . the pleadings that [the plaintiff] has filed in a lawsuit."

Dzwonar, supra, 348 N.J. Super. at 178 (emphasis omitted) (quoting

Restatement, supra, § 652D cmt. b). However, the Rules of Court

may have excluded the tax return from public access. See R. 1:39-

3(d)(1), 5:5-2(d); see also Pressler & Verniero, supra, cmt. 5 on

R. 5:5-2. The rules also provide a social security number is "a

confidential personal identifier" that generally may not be set

 29 A-1042-15T4
forth "in any document or pleading submitted to the court." R.

1:38-7(a), (b). "[I]f the record is one not open to public

inspection, as in the case of income tax returns, it is not public,

and there is an invasion of privacy when it is made so."

Restatement, supra, § 652D cmt. b.

 Arseneault contends he relied on Debra's other divorce

counsel to redact the social security numbers. The motion court

found Arseneault's "reliance on the requirement that attorneys not

set forth confidential personal identifiers in any document or

pleading submitted to the court was similarly reasonable in shaping

his belief that forwarding the records to WSJ was not a violation

of the Rules of Professional Conduct." However, nothing in the

complaint suggested that Arseneault relied on that requirement or

other counsel, or had that belief. Moreover, a violation of the

ethics rules was not a required element of invasion of property

by publicity of private facts.

 As Michael's allegations concerning his social security

number was sufficient to state a claim, the motion court erred in

dismissing count four.5

 E.

5
 Thus, we need not address Michael's argument that the TRO was
also private information under R. 1:38-3(d)(9).

 30 A-1042-15T4
 Count five alleged Arseneault and Debra conspired to commit

the torts alleged in counts one, two, three, and four. The motion

court ruled that "[a]s a result of Counts One through Four being

dismissed, Count Five – civil conspiracy – is DISMISSED WITHOUT

PREJUDICE on the premise that there is no valid underlying tort

to substantiate the claim." As we have reversed the dismissal of

counts two, three, and four, there are underlying torts which

Arseneault allegedly conspired to commit. Accordingly, we reverse

the dismissal of count five. See State, Dep't of Treasury, Div.

of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc., 387 N.J.

Super. 469, 486 (App. Div. 2006).

 Affirmed in part, reversed in part, and remanded for further

proceedings. We do not retain jurisdiction.

 31 A-1042-15T4